INTERNATIONAL TRAVELERS' ASS'N v. ROGERS.

(Court of Civil Appeals of Texas. Dallas. Jan. 24, 1914. Rehearing Denied Feb. 14, 1914.)

1. INSURANCE (§ 665*)—ACTION ON POLICY—SUFFICIENCY—EVIDENCE.

In an action on an accident policy to recover for the loss of an eye, evidence *held* to warrant a finding that plaintiff's eye was injured by external, violent, and accidental means.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

2. INSURANCE (§ 527*) — ACCIDENT POLICY — CONSTRUCTION—"ENTIRE."

Under an accident policy providing that, if the accident should result in the loss, within 90 days after an accident, of the "entire" sight of the eye, the insured shall receive not exceeding $1,000, the word "entire" does not mean total blindness; but it is sufficient if the insured had practically lost the entire sight of the eye.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1312, 1313; Dec. Dig. § 527.*

For other definitions, see Words and Phrases, vol. 3, p. 2410.]

3. INSURANCE (§ 665*)—ACTION ON POLICY—EVIDENCE.

In an action upon an insurance policy, evidence *held* to show that the insured had lost the entire sight of an eye within the provision for a certain indemnity where the accident results in the loss of the entire sight of an eye.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

4. EVIDENCE (§ 509*) — ACTION ON POLICY — ADMISSIBILITY OF EVIDENCE.

In an action upon an accident policy, the court properly refused to allow a physician to state that, in his opinion, the insured had not lost the entire sight of his eye.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2312, 2313; Dec. Dig. § 509.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by E. M. Rogers against the International Travelers' Association. From a judgment for plaintiff, defendant appeals. Affirmed.

. Seay & Seay, of Dallas, for appellant. W. S. Bramlett and D. A. Frank, both of Dallas, for appellee.

TALBOT, J. E. M. Rogers brought this suit against appellant to recover the sum of $1,000, alleging, in substance, that appellant was a corporation organized under the laws of Texas, and engaged, in its corporate name of International Travelers' Association, in the accident insurance business; that appellee was a member of said association, and held a policy of insurance issued by it; that through external, violent, and accidental means he had lost the entire sight of one of his eyes; and that under the terms of the policy he was entitled to recover therefor the amount sued for. In regard to the accident, the appellee alleges "that on or about February 29, 1912, while going along the streets of his home town, and during the time that the said accident insurance certificate was in full force and effect, plaintiff having complied with all the reasonable rules of the defendant, plaintiff was accidentally struck in the eye by a pebble, a piece of sand, dust, dirt, or some foreign substance, the nature of which plaintiff is not able more specially to set out, causing bodily injuries, which were caused solely and exclusively by violent, external, and accidental means, thereby causing inflammation and active ulceration, leaving a dense scar of the cornea over the entire normal pupil, and on account of which plaintiff has sustained the entire loss of the sight of said eye." Defendant, among other things not necessary to state, pleaded general and special demurrers, a general denial, and specially the following by-law of the association: "Or, if said accident shall result in the loss within ninety days thereafter of the entire sight of one eye, the member shall receive as indemnity one-fifth of the amount collected from one assessment, not exceeding in any event the sum of $1,000.00." Defendant also specially denied that the appellee had suffered the entire loss of the sight of his eye, but that he was only entitled to injuries of an ordinary character, as provided for in the policy and by-laws. The case was tried before the court and a jury, and the trial resulted in a verdict and judgment in favor of the plaintiff for the sum of $1,000, from which the defendant appealed.

[1] The controlling questions presented by the assignments of error for our determination are: (1) Was the evidence offered sufficient to warrant the jury's finding that appellee's eye was injured by external, violent, and accidental means? (2) Is the evidence sufficient to show that appellee, as a result of that injury, lost, within the meaning and contemplation of the by-law quoted above, and pleaded by appellant as a part of the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

contract made with appellee, the entire sight of his eye? We have reached the conclusions that both of these questions should be answered in the affirmative.

Touching the time and manner of the injury, appellee testified: "On February 27th I sustained an accident to my left eye. That was a warm, blustery day. In the portion of Denison that I was in on that day there is sand and gravel, and I sustained this accident at Denison. There was an obstacle that blew in my eye which was enough to cause pain; something like a cinder or gravel, and it caused my eye to smart and burn that afternoon. My eye had not bothered me until up to about 2:30 that afternoon. I got to Denison about 2 o'clock that day. Prior to that time I had not been where the sand was blowing. I had been in my office at Sherman prior to that time. The first notice of the injury to my eye was when it first burned, and it commenced to hurt me between 2 and 3 o'clock that afternoon. I did not have my eye treated by a specialist on that day, but subsequently I did. Right at the time I didn't pay much attention to it, but the smarting and burning increased during the afternoon; it got worse in the afternoon. I do not know what it was that went into my eye; but, whatever it was, the first attention I paid to it was between 2 and 3 o'clock. I went to a druggist on the morning of the 28th of February, and he gave me something to put in my eye. On the morning of the 29th I went to a specialist, and he examined my eye, and treated it. I do not know what it was that went into my eye. I know that something went into my eye some time that afternoon." Dr. O. C. Ahlers, a specialist on the diseases of the eye, testified that he treated appellee's eye, and that his books show that he began the treatment on the 29th day of February, 1912, and ceased on the 16th day of June, 1912. He further testified: "In determining the amount of vision a man has with his eye, or in determining the trouble caused by the introduction into the eye of some foreign substance, we have different methods. In the absence of any foreign object being found in Mr. Rogers' eye when he first came to me, I found, or rather it made me believe, that a portion of the cornea, the epithelium covering the light vision, the covering over the cornea was scuffed off, that is, the deeper layer was scuffed off over quite a large surface—probably a little over one-eighth of an inch in diameter, probably a little more than that. Those conditions were the result * * * of some foreign substance scraping that surface off; but I found no foreign substance in the eye at the time I made the examination. * * * Judging from the condition of the cornea that I found in Mr. Rogers' case, I would say that condition was not caused from any disease." This testimony of Dr. Ahlers, notwithstanding other competent eye specialists examined and testified concerning the condition of appellee's eye, is practically without contradiction, and, taken in connection with the testimony of the appellee, is amply sufficient to justify the conclusion that appellee's eye was injured by external and accidental means.

[2, 3] The second question is more difficult of solution. In relation to this question, the appellant requested the court to charge the jury, in effect, "that the word 'entire' means all and whole of a thing," and that, unless they believed from the evidence that appellee had lost the entire sight of his eye, to return a verdict for the defendant. This charge was refused, and the jury instructed as follows: "If you find from the evidence that plaintiff, on or about the 27th day of February, 1912, did by some external, violent, and accidental means, and independent of all other causes, suffer the practical loss of the entire sight of one of his eyes, and that such loss, if any, was sustained within a period of 90 days from said date, then you should return your verdict for the plaintiff for the sum of $1,000." Appellant complains of the refusal of the above special charge and the giving of the paragraph of the main charge quoted. Appellee is not entitled to recover $1,000, for which he obtained judgment in the court below, unless the evidence shows that, as a result of the injury received, he has lost, within the meaning of his contract with appellant, the entire loss of the sight of his eye. The evidence discloses that upon the first examination of appellee's eye it was discovered that the vision of his injured eye was one-twentieth, that upon the second examination a month later it was one-twelfth, and upon an examination made about the time of the trial of this case it was one-tenth. The appellee testified: "As to the exact vision of that eye, I can make out light from darkness, but cannot see to read." Asked by one of the attorneys who was at a distance of about 15 feet from appellee, "Can you see me sitting here?" he replied: "I cannot tell who you are. I can tell you are a human." The attorney having moved farther way, the appellee said: "The distance you are from me now I judge is about 25 feet. I can tell there is something there now; but I don't know what it is." Speaking with reference to a book held in the hand of the attorney, appellee said: "I know what that is because I can see the marks of the blur of it. It looks to me just like a blur. I know it is a book because it has marks of a book on the outside. * * * I can see those letters better than I can see the other because the binding is a blur. I am looking at that with my right eye covered; it looks like it is farther away than it really is." He further said: "I cannot use that eye for reading, and I cannot use it to get about with. I have tried to do so. I ran into a post on one occasion, when I was trying to use it to guide me. I can determine there is a wall before me by

the shadow it will make; but I can't determine as to the distance the wall is from me. I can tell from the outline, or shadow, that a buggy is before me, and I know it is a buggy because of my acquired knowledge of the shape and appearance of a buggy; but I can get no idea of how fast it may be moving. I can't tell how near it is to me until it gets right at me." Appellant contends that this testimony does not show the loss of the entire sight of appellee's eye, that this was necessary, under the pleadings and the terms of the policy issued to him, in order to recover the amount sued for in this action; therefore the trial court erred in refusing to grant appellant a new trial on the ground that the verdict and judgment rendered herein was contrary to the evidence, and in charging the jury that, if appellee had "practically" lost the entire sight of his eye, he would be entitled to recover. Counsel representing the parties state they have found no case just like the one under consideration, and we know of none. We are of opinion, however, that the evidence was sufficient to show that appellee has suffered, as a result of the injury alleged, a practical loss of the entire sight of his eye, and that the trial court correctly charged the jury that, if he had sustained such loss, he was entitled to recover the amount for which he asked judgment, and did not err in overruling appellant's motion for a new trial.

As held by the courts, there seems to be little or no difference in the meaning of the words "entire" and "total." Each have been defined to mean "all or whole." East Texas Fire Ins. Co. v. Blum, 76 Tex. 653, 13 S. W. 572; Guthrie v. Wheeler, 51 Conn. 207. This is undoubtedly the literal meaning of the words; but, in cases arising under policies insuring the holder thereof against loss in the event of "total disability," the courts have not been disposed to hold to a literal construction of the contract. Such a holding, according to the opinion of the Supreme Court of this state, as expressed in Fidelity & Casualty Co. v. Getzendanner, 93 Tex. 487, 53 S. W. 838, 55 S. W. 179, 56 S. W. 326, would be opposed to the great weight of authority. In support of this view of our Supreme Court may be cited, as well as many others, the case of Mutual Benefit Association v. Nancarrow, 18 Colo. App. 274, 71 Pac. 423. In this case it is held that the words "totally disabled," as used in an accident policy, do not mean a state of absolute helplessness. In Brotherhood of Railway Trainmen v. Dee, 108 S. W. 492, the appellant was a fraternal benefit society, and the policy or benefit certificate stipulated that the amount thereof should be paid to the member in the event of his "total and permanent disability." He became sick and died. The Court of Civil Appeals for the Second District held that from the time he first became sick he was never able wholly or partially to perform the duties of his avocation, and that he was thereby "brought fully within the meaning of the terms 'total and permanent disability.'" The Supreme Court granted a writ of error, and reversed and remanded this case, which had been affirmed by the Court of Civil Appeals; but the correctness of the holding of the latter court to the effect that the sickness of Dee so disabled him that he was thereby "brought fully within the meaning of the terms 'total and permanent disability'" does not seem to have been questioned. In Turner v. Fidelity & Casualty Co., 112 Mich. 425, 70 N. W. 898, 38 L. R. A. 529, 67 Am. St. Rep. 428, where the policy provided for an indemnity for injuries which would wholly disable the insured "from prosecuting any and every kind of business pertaining to his occupation," it was held that a recovery might be had on proof of an injury, and showing that the insured was in the real estate business, and went to his office every day for a short time, but was unable to do any kind of work. The court here, in effect, said that a fair interpretation of the contract was, not that the insured must be so disabled as to prevent him from doing anything, but that he must be disabled to such an extent as to prevent him from doing any and every kind of business pertaining to his occupation. In Singleton v. Boone County Home Mut. Ins. Co., 45 Mo. 250, it is held "that 'total loss,' as employed in a policy of insurance, is to be understood in its natural and usual sense, and that, where the property insured was valued at $3,900, and goods to the value of some $70 were saved, the loss was total." Likewise, in the case of Williams v. Hartford Ins. Co., 54 Cal. 450, 35 Am. Rep. 77, the following charge, which is quoted with approval in H.-B. Ins. Co. v. Garlington, 66 Tex. 103, 18 S. W. 337, 59 Am. Rep. 613, was held to be correct: "A total loss does not mean an absolute extinction. The question is not whether all the parts and material composing the building are absolutely or physically destroyed, but whether, after the fire, the thing insured still exists as a building. Although you may find the fact that after the fire a large portion of the four walls were left standing, and some of the iron work still attached thereto, still, if you find that the fact is that the building has lost its identity and specific character as a building, you may find that the property was totally destroyed within the meaning of the policy." The effect of these decisions is to declare that, "where a building is so injured by fire as to lose its specific character as a building, it is a 'total loss' within the terms of an insurance policy, though some of the walls are standing, and some of the material is not destroyed." These cases are analogous, if not directly in point, to the case at bar, and justify and sustain the conclusion we have reached that appellee, within the contemplation and meaning of the contract sued on, has suffered, in consequence of the

injury alleged, the loss of the entire sight of his eye. The evidence, as we have seen, shows he cannot read with the injured eye, and cannot use it for getting about; that he tried to do so, and ran against a post; that he cannot tell distances with his eye, and cannot tell how near vehicles or objects approaching him, such as a buggy, are to him until they get right at him. He was district commercial manager of the telephone company at Sherman, and, while the evidence does not disclose to what extent he had to use his eyes in the performance of his duties or work in which he was engaged, yet it is manifest that, if his uninjured eye was in the condition his injured one is in, he would not be able to hold his position, and that for all practical purposes an eye in which there remains only a one-tenth vision is of no service so far as performing the duties of a man's business is concerned. That, in effect, and results, and to all intents and purposes, appellee has lost the entire sight of his eye cannot be gainsaid, and such is the meaning of the word "practical," as used in the court's charge.

[4] The assignment complaining of the court's action in refusing to allow the witness Dr. McReynolds to state that, in his opinion, appellee had not lost the entire sight of his eye will be overruled. Such a statement of the witness, under the facts of this case, was, we think, even under the very broad latitude allowed in the introduction of expert testimony, inadmissible.

The evidence supports the verdict; the court's charge in the particulars complained of is, in our opinion, correct, and the judgment is affirmed.