## Fidelity & Casualty Company of New York v. Logan.

(Decided March 25, 1921.)

### Appeal from Bell Circuit Court.

1. Insurance—Accident Insurance—Settlement—Action by Beneficiaries.—A settlement by assured under an accident policy does not bar an action by the beneficiary to recover life benefits provided for in said policy, where the amount paid, though recited to be in full of all claims for injuries received, was the exact amount to which assured was entitled for total disability for the period covered by the settlement.

2. Insurance—Indemnity—Recovery by Beneficiaries.—In a policy providing indemnities for total and partial disabilities and death benefits, which contains a further provision that in addition to the death benefits the company will pay a weekly indemnity for that part of the period between the date of the accident and the date of death for which no weekly indemnity has been paid, the

beneficiary is not entitled to recover any unpaid weekly indemnities where assured has made a settlement with the company.

3. Insurance—Accident Insurance—Death Benefit.—Where it is provided in an accident policy that a death benefit is payable if death occurs as a direct result of bodily injury within 26 weeks of the date of accident, irrespective of the kind of disability, or if during a period of total disability assured dies as the direct result of the injury causing disability, recovery will be allowed where assured died more than 26 weeks after the accident, but was continuously disabled from the date of the accident until his death.

4. Insurance—Accident Insurance—Total Disability.—Where assured is prevented from doing or performing all the substantial acts or duties customarily performed by him this will be treated as such total disability as entitles him to the indemnity or benefits provided for that class of disability. Though assured, following an accident, might be able to do minor and trivial things not requiring much of his time or attention, or be able to perform a part of his work he can not be said to be able to do those things which constitute substantially all the duties usually performed by him if his injuries are such that care and prudence require him to desist from transacting any such business in order to effect a speedy cure.

5. Insurance—Death—Question for Jury.—In a suit on an accident policy where there is a conflict in the evidence as to whether assured died from accidental or other causes the question is for the jury.

6. Insurance—Accident Insurance—Settlement—Bar.—A receipt by assured under an accident policy in full of all claims and demands resulting from an injury bars the assured from recovery of any other indemnity on account of disability which is a mere continuance or recurrence of the original disability for which settlement has been made.

7. Insurance—Accident Insurance—Settlement.—In a policy providing indemnity for total and partial disabilities on account of accidental injuries, payment to assured in a lump sum of weekly indemnities, though recited to be in settlement of all claims under the policy, will not defeat a recovery by the beneficiary for death benefits, where there is an express and separate provision in the policy for the latter.

8. Insurance—Instructions.—Where in a suit to recover on an accident policy it was alleged in the answer that in the schedule of warranties, or application for the policy, applicant made certain material misrepresentations, the failure of the court to submit this issue to the jury in a proper instruction is reversible error.

FRED FORCHT, H. N. LUKINS, WM. LOW and EDWIN A. JONES for appellant.

J. M. GILBERT and N. E. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

On September 10, 1917, appellant issued to Daniel Boone Logan what is termed a progressive life indemnity disability policy, whereby it insured the said Logan against bodily injury resulting directly, independently and exclusively of all other causes in total and partial accident disability and death.

July 11, 1918, and during the life of the policy, assured was thrown from a mule and struck a concrete pavement, thereby sustaining certain serious and painful injuries, the exact nature of which we will see later. Assured was an attorney and banker, and was largely interested in certain timber and coal lands. He had been engaged in the practice of his profession for a number of years, but at the time the policy was issued, and for a few years prior thereto, he had practically given up his law business and was devoting most of his time to his coal and timber interests.

As chairman of the local draft board Logan had taken an active part in its work. A day or two following the accident he went to Middlesboro to attend a session of the board, but was suffering so much he returned home on the afternoon train; though complaining a great deal he was up and around for about a week following the accident, but was finally persuaded to go to bed where he remained three weeks. From that time until about Christmas he made occasional trips to the office, sometimes attended to part of the correspondence, occasionally dictated letters at home, made a few trips to some of his coal property. He left home Christmas and went to Florida. Thinking it was necessary for him to attend to the preparation of some income tax reports he returned home in March, 1919, but finding an extension of time had been granted by the government, he remained a few days and then returned to Florida, where he died April 2, 1919.

In this suit by his widow and beneficiary under the policy she recovered judgment for $5,000.00, the face of the policy, and to reverse said judgment this appeal has been prosecuted.

It is said, the court erred in overruling the demurrer to the petition, on the ground that the petition failed to properly set forth a cause of action in accordance with the contract of insurance; but we find no merit in this contention.

It is next insisted the court erred in sustaining the demurrer to the second paragraph of the answer and also in refusing to grant a peremptory instruction in appellant's favor. Since these two propositions involve the same principle of law we will consider them together.

A.   In the second paragraph of the answer the company pleads and relies upon a settlement made with assured on December 4, 1918, wherein assured accepted the sum of $525.00 in full settlement and satisfaction of all indemnity and claims by reason of injuries sustained on or about July 11, 1918.  In the proof of claim signed by assured, and dated October 1, 1918, it is stated that he was continuously and totally disabled as the direct result of said injury from the date thereof to September 20, 1918, and that he attended to no part of his duties until September 1, 1918, and in answer to the printed statement in the proof, to-wit:

"I did not perform fully all the essential duties of my occupation until" he wrote, "am yet almost wholly disabled."

And then, in another part of the proof, the one referring to partial disability, he fixes this as from "July 11, 1918, to the present." Thus it appears there is an overlapping of statements as to total and partial disability.

Under the heading of "accident indemnities, total accident disability," article 4 of the policy provides:

"If the assured suffers total accident disability, the company will pay the assured so long as he lives and suffers said disability twenty-five dollars a week."

And for partial accident disability, article 5 provides:

"If the assured suffers partial accident disability, the company will pay the assured for the period of said disability, not exceeding fifty-two consecutive weeks, a percentage of the weekly indemnity before specified, to be determined upon the extent of the disability but not less than 25 per cent, nor greater than 90 per cent."

And then follows the provision relating to death, to-wit: Article 6, which reads:

"If the assured suffers total accident disability, and, if, during the period of said disability, the assured suffers death as the direct result of the bodily injury causing the said disability; or, if within twenty-six weeks from the date of the accident, irrespective of disability, the assured suffers death as the direct result of a bodily injury; the company will pay the beneficiary five thousand dollars, *and in addition twenty-five dollars a week,*

*for that part of the period between the date of the acci-
dent and the date of death for which no weekly indemnity
has been paid."*

Thus it will be seen the policy contemplates not only
accident indemnities for total and partial disabilities, but
also death benefits, and we think it well to call especial
attention at this time to the italicized part of article 6.
In other words where weekly indemnities which had
accrued under the policy have not in fact been paid to
assured, the company agrees to pay to the beneficiary not
only the death benefit but all such unpaid weekly in-
demnities.  Though the proof of claim is dated October
1, the settlement was not made until December 4, which
was 21 weeks after the accident, and the payment of
$525.00 is the exact amount due under article 4 for this
period of time for total accident disability.  For partial
disability it is provided there shall be a graduated pay-
ment of not less than 25 nor more than 90 per cent., de-
terminable upon the extent of disability, and which is
payable for not exceeding 52 consecutive weeks.  It will
also be noticed that the death benefit is payable if death
occurs as a direct result of bodily injury within 26 weeks
of the date of accident, irrespective of the kind of dis-
ability, or if during the period of total disability assured
dies as the direct result of the injury causing the dis-
ability.  Assured did not die within 26 weeks; therefore,
to sustain a recovery under article 6 he must have died
while suffering from a total disability resulting from
said accident.

In construing clauses such as those heretofore quoted
this court, in line with practically all the courts in the
country, has adopted what is termed a reasonable or
liberal construction of such clauses, viz.: one that is as
just to the assured as to the assurer.  If, therefore, as-
sured is prevented from doing or performing all the
substantial acts or duties required of him in his busi-
ness this will be treated as such total disability as entitles
him to the indemnity provided for that class of disabil-
ity. See National Life & Acci. Ins. Co. v. O'Brien's Ex'x,
155 Ky. 498, 159 S. W. 1134; Doyle v. New Jersey Fid.
& Plate Glass Ins. Co., 168 Ky. 780, 182 S. W. 944; Hart-
ford Accident & Indemnity Co. v. Davis, et al., 184 Ky.
487, 210 S. W. 950; Aetna Life Ins. Co. v. McCullagh,
191 Ky. 226.

The facts upon which the court based its conclusions in these cases will be found by reading the separate opinions.

The evidence is sufficient to sustain the verdict of the jury as to the effect Logan's injuries had upon his ability to perform his accustomed duties.

Great stress is laid by counsel on the statement of Logan's son that his father was never able at any time to do one-third as much work as he was in the habit of doing before the accident. It appears that he fell far short of doing one-third of his usual work. Shortly after his injury he resigned from the draft board, a work in which he was deeply interested and which called for services of such a nature that it would seem he could have performed them as easily as anything else had his physical condition warranted his doing any kind of work. That he was able to write or dictate letters occasionally, to visit his office at times and to go upon some of his properties does not mean he was not totally disabled within the meaning of that term as interpreted by the courts and construed by the text writers. In visiting his property it is testified he could not do much walking or climbing and would have to rest frequently on these occasional trips. Even though assured might be able to do minor and trivial things not requiring much of his time or attention, or is able to direct his business or do some of the work himself, if his injuries are such that care and prudence require him to desist from transacting any such business or demand that he restrict his activities so long as it is reasonably necessary to effect a speedy cure, he can not be said to be able to do those things which constitute substantially all the duties usually performed by him. While in Florida, assured attempted to play a game of golf but found it was too strenuous for him; indeed his condition was such that it was considered unwise for him to even work in and around the yard of his winter home.

Since the testimony shows the existence of such a condition in regard to Mr. Logan's physical ability we are not prepared to say the jury was in error in finding the facts constituted a case of total disability from the time of the accident until assured's death.

It is urged that the doctors who attended assured while in Florida were of the opinion he died from myrocarditis, an inflammation of the heart muscles, and they found no evidence of any traumatic trouble; but there is

other medical testimony that his death was attributable to the accident, hence this was a question for the jury.

B. We come now to the question of the settlement and whether it is a bar to a recovery under the policy. There was no surrender of the policy following the settlement. It may be stated as a general proposition that a release of all claims on account of injury received, made by assured in the belief that he has fully recovered from the injury, bars any recovery for further loss of time resulting from the original injury, and this whether he has acted upon the advice of his own or the company's physician. There are some cases holding that where assured is mistaken as to the extent of his injury and after a settlement it develops his injuries are more serious than he had at first thought, he is not estopped from claiming indemnity for a continuing liability. 1 C. J. 481.

However, we are of the opinion that under the weight of authority, the evidence considered, Logan himself could not have recovered any further weekly indemnities for either total or partial disabilities subsequent to December 4, 1918. A fair statement of the rule applicable here is found in Fuller on Accident and Employers' Liability Insurance, p. 325:

"And where the assured has made claim for a period of total disability, and the claim has been paid, and a receipt given in full of all claims and demands resulting from the injury, and he has resumed his occupation, he can not recover any further indemnity, where he is subsequently disabled and such disability is merely a continuance or recurrence of the original disability for which settlement has been made."

But the payment of a weekly indemnity to the assured will not defeat a recovery by the beneficiary for death benefits where, as here, there is an express and separate policy provision for the latter. In support of its contention that the settlement bars all future recovery, counsel relies upon four cases. One of these involved an injury to a railroad employe and it was held that a settlement made by him in full of all claims growing out of said injury barred any recovery by the widow on account of his death. Melitch v. United Railway Co., etc., 121 Md. 457, 88 Atl. 229.

Two of the cases, to-wit: Clanton v. Travelers' Protective Asso., 101 Mo. Ap. 312, 74 S. W. 510, and General Accident, Fire & Life Insurance Corporation v.

Harris, 117 Miss. 834, 78 So. 778, were suits by the assured to recover weekly indemnities following settlements in full of all claims under their policies, a question not presented here since this is not a suit between the assured and the company.

The fourth case, Wood v. Mass. Mutual Acci. Assn., 174 Mass. 217, 54 N. E. 541, where the beneficiary was denied a recovery following a settlement by the assured, more nearly approaches the question raised on the present appeal, but that and the instant case are clearly distinguishable when the provisions of the two policies are examined. For instance, in the policy in the Wood case, after making provision for weekly indemnities, it is provided:

"*Or* if death shall result from such injuries alone within 90 days this association will pay, etc."

Thus clearly contemplating one payment only, i. e., either weekly indemnities or death benefits, whereas in the Logan policy it is just as positively stated that the company will pay both. Again it is provided in the Wood policy:

"The association's liability on this certificate shall not exceed the principal sum hereby insured, and the payment of a claim under any one of the benefits shall be payment in full for the accidental injury received."

A further evidence that one payment was all that was contemplated by that policy. There is no such provision in the Logan policy.

In Cunningham v. Union Casualty & Surety Co. of St. Louis, 82 Mo. App. 607, the policy provided that for the loss of an eye within 90 days after receiving an accidental injury the payment of one-eighth of the principal would be made, said payment to terminate the policy and discharge the company from further liability thereunder. In clause E provision was made for weekly payments on account of disability, which did not carry with it a forfeiture or surrender of the policy. Assured made a settlement under clause E for partial disability. Thereafter he suffered the loss of an eye resulting from the original injury, and it was held the prior settlement did not bar a recovery for the loss of the eye.

In Woodman's Acci. Asso. v. Hamilton, 70 Neb. 24, after a settlement for disabilities under a policy, a suit was instituted for the death of assured, and it was held the pleadings did not allege such facts as would bar a recovery for the death of assured, notwithstanding he

had made a settlement for all claims under the policy during his lifetime, the court saying that the settlement referred solely to the claims existing at the time of the settlement or which might have been urged on account of facts which had already transpired. In this connection see Moore v. Maryland Casualty Co., 151 N. C. 113, 63 S. E. 675, 24 L. R. A. (N. S.) 211; Graham v. Union Casualty & Assurance Co., 120 Mo. App. 621, — S. W. —.

The payment to Logan on December 4 did not release the company from its liability to the beneficiary for assured's death, resulting from said accident. This conclusion finds support in a previous decision of this court, to-wit: Pacific Mutual Life Ins. Co. v. McCabe, 157 Ky. 270, 162 S. W. 1136. The policy in that case provided for total disability claims, and for death benefits. McCabe, a painter by trade, was injured December 12, 1911. His condition having improved he applied to the company for disability benefits and was paid $33.00. He acknowledged receipt of the check for this payment in full for the accident received.

January 29, 1912, after eating a light supper McCabe retired to his bed and was found dead the next morning. In this suit by his beneficiary to recover the life benefits there was a verdict in her favor and this was affirmed on appeal. It was pleaded in the answer said payment was in full of the company's liability and therefore the plaintiff was estopped from claiming further benefits under the policy. The company contended that assured having collected the disability benefit no recovery could be had for the loss of life. The court, in the opinion, points out that by the terms of the policy the company was obligated to pay the amount specified in the table of total loss benefits if assured died within 90 days and in addition thereto disability benefits provided for in clause I; that not only was the assured entitled to the disability benefits for one month as provided in the policy, but the $400.00 for the loss of his life was also payable to his beneficiaries, and this notwithstanding the policy contained this provision, to-wit:

"d. The right to make claim for one of the above specified results of any accident or illness or disease shall exclude all other claims based upon the same accident or illness or disease, and the right to make any claim under clauses 1, 2, and 5 shall cause this policy to cease and it shall be surrendered to the company."

On this phase of the case it will be seen that appellant was not entitled to a peremptory instruction, and since the settlement by assured did not bar the right of action by the beneficiary, the court did not err in sustaining a demurrer to the second paragraph of the answer.

In the last place it is said the court erred in refusing to give an instruction tendered by appellant upon an alleged breach of warranty. One of the defenses set up in the answer as amended was that in the schedule of warranties or the application for the policy, under section L, reading:

"No accident, health or life insurance issued to me has been cancelled; nor has any renewal of such insurance been refused; nor has any application ever made by me for such insurance been declined—except as follows," assured caused this notation to be made:

"1891 declined by N. Y. Life, have since taken out $50,000.00 or more."

Dr. Ramsey, a witness for appellee, testified he had examined assured on two or three different occasions; the last examination was about four years prior to the date of his testimony (October, 1919). He thinks he made this examination for the Equitable Life Ins. Co., and at which time he found some indications of heart trouble, for which reason he was under the impression the company refused to issue a policy to Logan.

In Ky. Stats., sec. 639, it is provided: "All statements or descriptions in any application or policy for insurance shall be deemed and held representations and not warranties, nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy."

It does not appear whether Dr. Ramsey notified Logan of the result of his examination, nor whether Logan had any knowledge of the existence of any heart trouble when he made application to appellant for insurance. However, we held in Security Life Ins. Co. of American v. Black, Jr.'s Admr., 190 Ky. 23, 226 S. W. 355, that under the above statutory provision a material misrepresentation made in an application for a life insurance policy will prevent a recovery upon it, although the misrepresentation was innocently made, and in the belief of its truth.

Appellant was entitled to have this issue, raised by its pleadings, submitted to the jury, and the court's

failure to so submit it constitutes such error as necessitates a reversal of the judgment appealed from.

Upon a retrial the court will embody this defense in a properly prepared instruction.

Wherefore the judgment is reversed for further proceedings consistent herewith.