## Continental Casualty Company v. Linn.

(Decided November 20, 1928.)

Appeal from Calloway Circuit Court.

1.   Insurance.—Knowledge of soliciting agent of material fact affecting accident insurance risk or liability of company is knowledge of company, and it is estopped from setting up defense of ignor-

ance or lack of notice, unless insured dealing with agent knew of his limited power, and that he was acting in excess of his authority.

2. Insurance.—Where there is no evidence that insured knew of agent's limitations, or that agent was without authority to waive terms of policy, it will be held, as matter of law, that insurer is liable for agent's conduct within apparent scope of his authority.

3. Insurance.—Accident insurance company will not be heard to say that soliciting agent did not possess authority to waive provision respecting written notice by his assurance that insured would be taken care of if his eye did not get well, where agent's assurance was relied on by insured, and lulled him into sense of security, since maxim "He who does a thing through another does it himself," applies with peculiar force to insurance agent's acts.

4. Insurance.—An accident insurance agent represents his company, and stands in its place in his community.

5. Insurance.—As respects waiver of notice, agent's failure to bring to attention of general offices of insurance company possibility of its becoming liable to insured under his accident policy for injury to insured's eye will not relieve company of its responsibility.

6. Insurance.—Agent's statements to insured that he would be taken care of, if his eye did not get well, held to be an acceptance by him of verbal notice, and as being sufficient compliance with terms of accident policy providing that written notice may be given to an authorized agent as well as to general officers of company.

7. Insurance.—Where proof of loss was filed before undertaking to recover on accident insurance policy, it was sufficient.

8. Insurance.—In action on accident insurance policy, in which insurer denied liability on ground that notice and proof of loss required by policy had not been given, and insured pleaded waiver of written notice by insurer's agent, question whether insured informed agent regarding injury to eye, and whether agent informed insured that he would be taken care of, if eye did not get well, held for jury.

9. Insurance.—An accident insurance policy must be interpreted according to its true character and purpose and in sense in which insured had reason to suppose it was uunderstood.

10. Insurance.—Loss of use of member of body is equivalent to loss of that member within meaning of accident policy, since term "loss" must be construed in its plain, ordinary, and popular sense.

11. Insurance.—Under accident policy, provision respecting extent of loss reading "loss . . . as used in reference to eye or eyes means irrecoverable loss of entire sight thereof," insured was entitled to recover where he entirely lost practical use of his eye, since that is common sense and fair intendment of policy.

12. Insurance.—In action on accident insurance policy for loss of sight of eye, in which insurer claimed that condition of insured's eye was result of pre-existing disease of long stanaing, evidence that

about four months before accident insured had engaged in target shooting, and illustrated keenness of his sight in same eye, held competent.

COLEMAN & LANCASTER for appellant.

E. P. PHILLIPS for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Affirming.

The appellee, John I. Linn, brought this suit to recover for the loss of his eye under a policy of insurance issued by the appellant, Continental Casualty Company. The policy provided for payment of $1,000 during the first year of its life for injuries "effected solely and independently of all other causes by the happening of an external, violent and purely accidental event." Each annual renewal of the policy added 5 per cent. to the indemnities payable, and, at the time appellee sustained the accident, the indemnity provided for such injury was $1,200, for which sum he recovered judgment.

The insurance company denied its liability on the ground that the insured had not suffered the entire loss of his eye within the terms of the policy; that such impairment of sight as he had was the result of disease and not accident; and, further, that the notice and proof of loss required by the policy had not been given. The plaintiff pleaded a waiver of written notice by appellant's agent.

The evidence relating to the accident and injury sustained is in substance as follows: The appellee was a railroad bridge carpenter, and on July 28, 1926, while adzing a piece of timber, a chip struck him "in or over the left eye." He continued with his work that day, although his eye gave him considerable pain. This condition existed until 4 days later, when he saw his family physician, Dr. Phillips, who testified that there was a contusion or bruise on the eye, and that it was swollen and red, and seemed to be pretty sore. It appears that in the previous March Linn had had some inflamed condition of the eyes known as ophthalmia, due, according to his doctor and himself, to his having worked in the midst of steam on a pile driver. Some medicine which had been given to him at that time was applied the day of the accident, and continued in an effort to relieve the condition

resulting from the injury, as appellee claimed. His eye appeared at times to be better and again to be worse, although he had no vision at any time. He continued under treatment of Dr. Phillips until some time in December, when he consulted Dr. Keyes, who testified that at that time the sight was destroyed, except in one little place, as small as a pinhead, which admitted the light into the eye, and stated that, if his other eye were in that condition, he would have had to be led about. The doctor diagnosed the disturbance as choroiditis. He sent appellee to Paducah, where he was examined by two or three specialists, who made the same diagnosis. The doctors all testified that the use of his eye was practically gone; that he could only tell light from darkness and indistinctly discern an object two or three feet distant; that there are different causes for this condition, such as tuberculosis and different blood diseases (none of which appellee proved he ever had), but that an injury is a frequent cause.

That appellee received the injury to his eye in the manner stated by him is proven by several witnesses who were at work with him at the time. The appellant's contention that the condition was the result of disease and not of injury is sustained only by appellee's admissions of the inflamed condition of both eyes as above related, and the opinions of two doctors that the affection had existed several years, and was the result of disease, yet admitting that such condition may arise from an injury. The question of cause was submitted to the jury, and the verdict is in accordance with the weight of the evidence.

Appellant urges upon us numerous reasons for a reversal of the judgment; the principal ones being that it was entitled to a peremptory instruction because of failure to give written notice of the accident within the time designated in the policy, and an error in the instructions.

1. The policy provided that written notice of an injury on which claim might be based must have been given 20 days after the date of the accident to the company at its general office in Chicago or to any authorized agent; but failure to give the notice within the time provided in the policy should not invalidate any claim, if it should be shown not to have been reasonably possible to have done so and that it was given as soon as was reasonably possible. It also provided that, upon receipt of such notice,

the company would furnish forms for filing proofs of loss, but, if it did not do so, that would be waived. It further provided that affirmative proof of loss should be furnished to the company at its office within 90 days after the date thereof. The company relies on a failure to comply strictly with these provisions.

Appellee and several other witnesses testified that within 10 days after he sustained the accident he met up with appellant's agent, George L. Harmon, who had written the policy of insurance, and secured each annual renewal thereof, at Bruceton, Tenn. Appellee there told Harmon about getting the lick in his eye, and Harmon pulled up his eyelid and examined his eye, and said that it looked pretty bad. Appellee told him he was going ahead with his work, whereupon Harmon said: "If it don't show up all right you let me know and we will pay you." Appellee further testified as to the conversation: "He said, 'We have always paid you, haven't we?' I said, 'Yes.' He said, 'We always will.'" As to what was said and done at the time a witness named Newt Edwards testified:

"We had changed trains at Bruceton; we got off of one train, and were waiting for the other train. Mr. Linn and several of us were there. Mr. Harmon came up, and was after some of the boys to take out an accident policy, the same as Mr. Linn had. Mr. Linn said, 'You like to have had to pay off the other day—I got my eye hurt'—Mr. Harmon raised his eyelid up, and said, 'You got a pretty bad lick in it,' and said, 'Have you been off any?' He said, 'No.' He said, 'Go ahead, and we'll see what the results are about it,' and he said, 'I will take care of you boys,' and said he always had taken care of them, and there was another man standing there that had something the matter with his foot. He was working in the same gang I was. He went home a few days before that, but had come back to Bruceton. Mr. Harmon said, 'There is a man standing there with his hand in my pocket now.'"

The two other workmen, companions of appellee, testified substantially to the same thing. George L. Harmon, the agent of the company, denied having seen appellee at any time near that date at that place or any-

where else, and said he had no such conversation. He is not corroborated in any way.

As stated, appellee relied on this as a waiver of the conditions of the policy respecting notice. The determination of the facts in this regard was submitted to the jury under the instruction presently copied herein. It was and is a question whether the facts which the jury found to have existed constitute in law a waiver. We hold that they do. While the company traversed the allegation that Harmon was its authorized agent, the proof of his agency was amply sufficient.

It is a well-established rule in this state that knowledge of a soliciting agent of any material fact affecting an insurance risk or liability of the company is the knowledge of the company itself, and it is estopped from setting up any defense of ignorance or lack of notice, unless the person dealing with the agent knew of his limited power and that he was acting in excess of his authority; and, where there is no evidence showing he knew of such limitations, or that the agent was without authority to waive the terms of his policy, it will be held as a matter of law that the company is liable for its agent's conduct within the apparent scope of his authority. The appellant company will not be heard to say that its agent did not possess authority to waive the provision respecting written notice by his assurance that appellee would be taken care of if his eye did not get all right. North River Insurance Co. v. Rawls, 185 Ky. 509, 214 S. W. 925; Ætna Life Insurance Co. v. Howell, 107 S. W. 294, 32 Ky. Law Rep. 935. The agent's assurance was relied on by the policyholder, and lulled him into a sense of security. The company will not be permitted to profit by its conduct, for it has been held the maxim, "He who does a thing through another does it himself," applies with peculiar force to the acts of an insurance agent. Phoenix Insurance Co. v. Spiers, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254. Whether purposely or otherwise, Harmon's promise misled the insured, and it would be a most palpable denial of justice to allow the company to escape liability under its policy because he did not make such notice in writing under these circumstances. Fidelity & Casualty Co. of New York v. Cooper, 137 Ky. 544, 126 S. W. 111. Soliciting agents are intrusted with power to obtain business for the companies they represent, and the consequent profits of the companies are obtained by

them. An insurance agent represents his company and stands in its place in his community. Ordinarily, he is the only person the policyholder knows and deals with in his transactions with the insurer. He is dealt with on the faith of his authority to do those things which he claims and has the ostensible right to do. Continental Insurance Co. v. Thomason, 84 S. W. 546, 27 Ky. Law Rep. 158; Phoenix Insurance Co. v. Spiers, supra; Hurst Home Insurance Co. v. Ledford, 207 Ky. 212, 268 S. W. 1090; Kentucky Live Stock Insurance Co. v. Stout, 175 Ky. 343, 194 S. W. 318.

The agent's failure to bring to the attention of the general offices of the company the possibility of its becoming liable to appellee under his policy will not relieve the company of its responsibility. Kentucky Live Stock Insurance Co. v. Stout, supra; Ætna Life Insurance Co. v. McCullagh, 185 Ky. 664, 215 S. W. 821, and the authorities therein cited.

The provision in the policy sued on that written notice may be given to an authorized agent as well as to the general offices makes this case stronger in favor of a waiver by the agent than some of those above referred to. Harmon was such an authorized agent, and his statements and assurances are held to have been an acceptance by him of verbal notice as sufficient compliance with the terms of the contract. U. S. Fidelity & Guaranty Co. v. Paxton, 142 Ky. 361, 134 S. W. 481; Hagman v. Equitable Life Assurance Society, 214 Ky. 56, 282 S. W. 1112.

Moreover, according to appellee's testimony, as soon as he realized from Dr. Keyes' statements in December that he had sustained the permanent loss of his eyesight, he wrote the agent, Harmon, at his home in Nashville, and requested a blank form on which to make the proof of loss required of him. Receiving no response, he obtained a form from a friend, and mailed proof of loss to the company on January 8th. No acknowledgement being received, he sent another on January 26th, by registered mail, and received the usual return card. And again on February 19th, he sent the company his affidavit respecting the accident and asserting his rights under the policy. After that time an inspector or investigator of the company made an investigation into the whole matter, and the company then declined payment.

The proof of loss was filed before undertaking to recover on the policy, which was sufficient. The same

company sought to defeat the recovery on the same ground in the case of Continental Casualty Co. v. Waters, 97 S. W. 1103, 30 Ky. Law Rep. 243; in which the court said, among other things:

> "With no legal defense whatever, to appellee's claim for $1,000, appellant sent its agent to an old, ignorant and helpless woman, and obtained from her, for $300 cash, a release of her perfectly valid claim against it for $1,000."

When she sued for the balance, it interposed the defense that no proof of death had been filed. The practices in the instant case, however, are not quite so extreme.

The authorities relied on by appellant are not at variance with the foregoing cases, and no error was committed in overruling appellant's motion for a peremptory instruction.

2. Complaint is made that the instructions authorized the jury to return a verdict for the plaintiff should it believe he had sustained loss of the *practical* use of his eye. The first instruction was that the jury should find for the plaintiff the amount sued for, unless it should find for the defendant under the following instruction:

> "The court instructs the jury that if you believe from the evidence that the plaintiff, Linn, did, in July, 1926, have an accident, by which he *entirely lost the practical use* of his left eye, and if you further believe from the evidence that the cause of the loss of his eye, or sight, resulted from the personal injury which was effected solely and independently of all other causes, by the happening of an external violent and purely accidental event; and if you further believe from the evidence that the defendant or its authorized agent, received notice of said accident within twenty days after it occurred, and that he agreed with the plaintiff that they would wait and ascertain what the result of said accident would be, and that the plaintiff acted upon that, then, the court says to you that further notice of said accident was waived by the company, and you should find for the plaintiff as in Instruction No. 1."

The provision of the policy respecting the extent of loss is:

> "Loss : . : as used with reference to the eyes means the irrecoverable *loss of the entire sight thereof.*"

It is insisted that the condition of appellee's eye as already described is not an *entire* loss of sight. To give to this provision of the policy the strict interpretation contended for by the insurance company would be a cruel and unconscionable construction of the contract. Such construction is not only opposed to fair and honest dealing, but is contrary to all authority.

An insurance policy must be interpreted according to its true character and purpose, and in the sense in which the insured had reason to suppose it was understood. The application of this liberal rule of construction has been made to varying provisions of insurance policies and the extent of recovery thereunder—specifically to the term "total disability," which is never given its strict literal meaning of absolute helplessness or entire physical disability, but rather as inability to do substantially or practically all material acts in the transaction of the insured's business in his customary and usual manner. Fidelity & Casualty Co. of New York v. Hart, 142 Ky. 25, 133 S. W. 996; Ætna Life Insurance Co. v. McCullagh, 195 Ky. 136, 241 S. W. 836; Fidelity & Casualty Co. of New York v. Logan, 191 Ky. 92, 229 S. W. 104. The term used must be construed in its plain, ordinary, and popular sense (1 C. J. 417), and the loss of the use of a member of the body is equivalent to the loss of that member. Can any one doubt that one who can barely distinguish daylight from darkness has lost his entire sight?

The case of Travelers' Insurance Co. v. McInerney (Ky.) 119 S. W. 171, is like the instant case in a remarkable degree. The insured ran against the edge of an open door, and was struck in the eye by a piece of hinge attached to it. His left eye was so bruised and injured as to destroy the vision, yet he could still distinguish light from darkness. In a suit for indemnity under the policy for the loss of his eye claimed to have been the result of the injury, it was shown, as here, by expert witnesses that he had choroiditis, which they said had apparently existed for several years, but that the loss could have

been occasioned by a blow. With particular application to the instant case, the court said:.

"In the present case, for the sake of argument, it might be conceded that there existed in appellee's eye what is known as 'choroiditis;' still there is not a particle of evidence to show that it in any wise interfered with appellee's vision. If this is true, and the blindness, as Dr. Reilly testifies, is the result of the hemorrhage, and the hemorrhage was produced by the injury, and the injury was produced in the accidental way as testified to by appellee, then the injury was the direct, immediate, and sole cause of the loss of vision in this eye. But, without speculating upon this question, it is sufficient to say that there is conflict in the evidence upon this point, and where there is a conflict in the evidence, it is the province of the jury to determine the weight that shall be given to the evidence offered by either side."

It was held that the insured had sustained the entire loss of his eye.

The appellant company, in Jones v. Continental Casualty Co., 189 Iowa, 678, 179 N. W. 203, 18 A. L. R. 1329, contended that, where the holder of its policy had his foot crushed under a car wheel, and amputation became necessary, leaving a remnant of his heel below the ankle, the insured had not suffered loss of his foot. Its unreasonable construction of the policy was not allowed.

In Maynard v. Locomotive Engineers' Mutual Life & Accident Association, 16 Utah, 145, 51 P. 259, 67 Am. St. Rep. 602, where a locomotive engineer had suffered the permanent loss of the sight of one eye to the extent that it disabled him from pursuing his usual occupation, it was held a recovery might be had under the policy for total loss of the eye.

In Murray v. Ætna Life Insurance Co. (D. C.) 243 F. 285, where the policy provided for the payment of indemnity for "loss of entire sight of one eye, if irrecoverably lost" (substantially the same as in this policy), it was held that, if by accident the insured had irrecoverably lost the useful and practical sight of the eye, although he could distinguish light from darkness or perceive objects temporarily for brief intervals, he was entitled to recover under the policy. Other cases to the

same effect are Tracey v. Standard Accident Insurance Co., 119 Me. 131, 109 A. 490, 9 A. L. R. 521; and Watkins v. United States Casualty Co., 141 Tenn. 583, 214 S. W. 78. In two Texas cases, International Travelers' Association v. Rogers (Tex. Civ. App.), 163 S. W. 421, and Brotherhood of Railroad Trainmen v. Britton (Tex. Civ. App.), 292 S. W. 286, recovery was authorized under the instructions if the jury believed the plaintiff had suffered the *practical loss of the entire sight of his eye;* the phrase being construed by the court as being sufficient under a policy provision for indemnity for loss of the entire sight.

It was proper, therefore, to give in the instruction that meaning to the phrase involved here, namely, "entirely lost the practical use of his eye," for that is a common sense and fair intendment of the policy.

3. Another ground submitted for a reversal of the judgment is that it was error to admit evidence that about four months before the accident appellee had engaged in target shooting and demonstrated the keenness of his sight in the same eye. As the defendant was contending that the condition of plaintiff's eye was the result of a pre-existing disease of long standing, such evidence was competent on that point.

Several other alleged errors are assigned, but no authority is cited to sustain the contentions. We do not regard them of sufficient merit to justify discussion.

The judgment is affirmed.