No. 31,260

JOSEPH E. NOEL, *Appellee*, v. THE CONTINENTAL CASUALTY COMPANY, *Appellant*.

(23 P. 2d 610.)

Opinion filed July 8, 1933.

*H. S. Roberts*, of Kansas City, and *R. C. d'Autremont*, of Chicago, Ill., for the appellant.

*Justus N. Baird* and *Elmer E. Martin,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to reform an accident insurance policy and enforce it as reformed. Trial was to the court, with the aid of a jury, and resulted in judgment for plaintiff. Defendant has appealed.

The plaintiff, Joseph E. Noel, was employed by a railroad company at Kansas City as a car oiler. Defendant is a corporation engaged in the business of writing policies of insurance against bodily injuries caused by accident, and perhaps other forms of policies, and advertises itself as "The Railroad Man's Company." L. W. Dearing was an agent of the defendant at Kansas City and appears to have had authority to solicit insurance for defendant, take applications in writing for insurance, collect the premiums for the policies, and to accept offered applications, although the policies were written at the home office of defendant. Dearing had been acquainted with Noel for about five years. On March 9, 1931, Dearing met Noel at the waiting room at the railroad yards where Noel was employed. Several other railroad men were present. He talked with Noel about making an application for an accident policy and explained the policy. Noel seemed to be interested. Dearing had with him a circular furnished him by defendant to be used for advertising purposes and in soliciting insurance. This circular stated: "The 'New Pilot' and 'New Safety' policies pay; in event of accident" scheduled losses, including "For the loss of thumb and index finger one-half the principal sum." It also contained a statement of the amount of accident indemnity and hospital benefits. While soliciting the insurance from Noel, Dearing wrote on this circular the amount, $5,000, the policy would pay in the event of accident for any loss, which was double the principal sum; $2,500 for the full principal sum, and $1,250 for the loss of thumb and index finger, one-half the principal sum. He also wrote thereon the amount of accident indemnity of $80 per month and the maximum hospital benefits, $160, and that the premium was $40 per year, payable in ten monthly payments of $4 each, the first payment to be May 1. He also wrote across the face of the circular "Acc'd offer, 3-9-31," and signed his name, "L. W. Dearing," and delivered it to Noel. On the same occasion Noel signed a written application for insurance. This was in

the form of questions and answers, but it did not mention any specific kind of insurance applied for. Noel also executed a "paymaster's order" to the paymaster of his employer directing him to pay defendant out of his salary or wages, as they became due, $4 per month, beginning May 1, 1931, for ten months, in payment of the premium on the policy. Dearing took the application for insurance which Noel had executed and the paymaster's order, and presumably forwarded them to the home office of defendant. In about ten days plaintiff received from defendant a "New Pilot" accident policy of insurance. The principal sum named in the policy was $2,500. In Part I, paragraph B, of the policy is set out in bold black-face type a schedule of the losses arising from accident, for which double the principal sum, or the principal sum, or one-half the principal sum would be paid. Included in this schedule so printed was "For loss of thumb and index finger of either hand . . . one-half said principal sum." Directly following this schedule in the policy is a paragraph, printed in much smaller type than the schedule, providing for monthly indemnity for the period between the date of the accident and the actual loss as shown by the schedule, and following that, in the smaller type, is a paragraph which, so far as here pertinent, reads: "Loss, as above used with reference to . . . thumb and index finger, means complete severance at or above the metacarpal-phalangeal joints."

Part II of the policy provides for annual increase of benefits, not material in this case. Part III provides for monthly accident indemnity where there is total or partial loss of time, when there has not been a complete loss of a member, as set out in the schedule, part I, paragraph B. Part IV of the policy provides for double indemnity, which is not applicable in this case; part V for hospital indemnity, and part VI for surgical operations.

On January 2, 1932, while oiling a moving train, Noel's foot caught on a wire and he fell in such a way that a part of his left hand was on the rail and his thumb and index finger were mashed by the wheels of the car. As a consequence of this he had to go to the hospital, where he remained until the second of February. On January 11 the thumb was amputated back of the first joint and the finger amputated about halfway between the second and third joints. Neither the thumb nor finger was severed at or above the metacarpal-phalangeal joints. Plaintiff was not able to return to work until March 16, 1932.

In this action plaintiff's principal contention was that the contract of insurance was made on March 9, 1931, when Dearing exhibited the circular and explained its provisions and plaintiff made his application for insurance, which was then accepted, and he gave his paymaster's order for the payment of the premium; that under this contract, so far as the accidental injury which he sustained is concerned, it provided that the company would pay "for· the loss of thumb and index finger $1,250, one-half the principal sum"; that at the time this contract was made these words were not qualified or limited in their meaning; that the ordinary meaning of such language is that the loss of the thumb and index finger is the loss of their use as useful members of the hand. Plaintiff's action primarily is based upon the claim that the contract, as made and accepted, did not include what was later contained in the policy, that the "loss of thumb and index finger means complete severance at or above the metacarpal-phalangeal joints," and that the contract having been made without including those words, the policy should be reformed by striking them out, or considering the policy as though it did not contain those words. Under plaintiff's interpretation of the contract defendant's liability was for the loss of the thumb and index finger, $1,250, as provided by part I, paragraph B, of the policy, and the additional benefits provided for hospital and surgical operations provided for by parts V and VI of the policy.

Defendant contended that it had no liability under part I, paragraph B, of the policy, ·for the reason that there had not been a complete severance of the index finger and thumb at or above the metacarpal-phalangeal joints, but that its liability to plaintiff was under part III of the policy relating to monthly indemnity for total and partial loss of time, and under parts V and VI of the policy relating to hospital indemnity and surgical operations.

The loss of a member of the body, as used in an accident insurance policy, unless restricted or modified by other language, carries the common meaning of the term "loss," which is the loss of the beneficial use of the member. Obviously this may occur when there is not a complete severance of the member from the body. (*Travelers' Ins. Co. v. Richmond,* [Tex. Civ. App.] 284 S. W. 698; *Continental Casualty Co. v. Linn,* 226 Ky. 328, 10 S. W. 2d 1079; *Jones v. Continental Cas. Co.,* 189 Ia. 678, 179 N. W. 203; *L. E. Mut. L. & A. Ins. Co. v. Meeks,* 157 Miss. 97, 127 So. 699; *Moore v. Ætna Life Ins. Co.,* 75 Ore. 47, 146 Pac. 151; *Bowling v. Life Ins. Co. of*

*Va.*, 39 Ohio App. 491, 177 N. E. 531; *Citizens' Mut. Life Ass'n v. Kennedy*, [Tex. Civ. App.] 57 S. W. 2d 265; *Sneck v. Travelers' Ins. Co.*, 34 N. Y. Supp. 545; *Sheanon v. The Pacific Mutual Life Ins. Co.*, 77 Wis. 618, 46 N. W. 799; *Lord v. The American Mutual Accident Ass'n of Oshkosh, Wis.*, 89 Wis. 19, 61 N. W. 293; *Berset v. New York Life Insurance Co.*, 175 Minn. 210, 220 N. W. 561; *Sisson v. Supreme Court of H.*, 104 Mo. App. 54, 78 S. W. 297; *International Travelers' Ass'n v. Rogers*, [Tex. Civ. App.] 163 S. W. 421.)

At the time the contract of insurance was agreed upon, March 9, 1931, Dearing did not exhibit a sample policy to Noel, but showed him the circular previously described, which used the term, "loss of thumb or index finger," without qualifying language. He testified that he explained to Noel that the term meant severance back of the metacarpal-phalangeal joint, but there was an abundance of evidence on plaintiff's behalf that no such explanation was made. The court submitted that controversy to the jury, under proper instructions, and the jury found, in answer to a special question, that no such explanation was made, but on the other hand that Dearing intentionally induced the belief on the part of plaintiff that payment would be made if he sustained a substantial loss of his thumb and index finger as functional members of the body by reason of accident. This finding of the jury is abundantly sustained by the evidence, it was approved by the trial court, and is conclusive on that point here.

Since the contract was made, both with the oral understanding and with the natural meaning of the term as stated in the circular used as the basis for negotiations, that the term should have its ordinary meaning, the trial court was justified in treating the policy as though it did not contain words of limitation upon that liability.

Noel was justified in believing that the circular furnished by defendant and used by Dearing as a basis for their negotiations correctly stated the terms of the policy to be issued. Our statute (R. S. 1931 Supp. 40-235) prohibits the use by an insurance company in a circular of a statement of any sort misrepresenting the terms of the policy to be issued or the benefits promised thereby. If defendant planned to issue a policy containing a definition of loss of thumb and index finger differing from that which the words themselves normally would imply, it should have stated that limitation in its circular.

There is another reason for disregarding this limiting definition in the policy. Our statute (R. S. 1931 Supp. 40-1109) provides, in brief, among other things, that no policy of insurance against loss by accident shall be issued unless the exceptions of the policy be printed with the same prominence as the benefits to which they apply. This was not done in this policy. Appellant contends that the definition of loss printed in smaller type in the policy than the schedule of losses is not an "exception," hence that the statute does not apply. But this is hardly an accurate analysis of the policy. The words "loss of thumb and index finger," as used in the schedule of accidents to which benefits apply, as previously pointed out, meant the loss of the beneficial use of those members. When, in a succeeding paragraph and in smaller type, the defendant attempted to limit those benefits to cases only in which there was an actual severance at or above the metacarpal-phalangeal joints, it placed in the policy a limitation or exception to its liability previously embodied therein. We think the statute applicable. (See *Stewart v. Mutual Benefit Health & Acc. Ass'n,* 135 Kan. 138, 9 P. 2d 977.)

Turning now to the points argued by appellant. It is contended the court erred in overruling its motion for judgment on the pleadings and the opening statement of counsel, and in overruling its objection to the introduction of evidence. The points are not well taken. The arguments are predicated upon the theory that defendant was bound by the provision of the policy defining loss of thumb and index finger to mean severance at or above the metacarpal-phalangeal joints. This argument overlooks the allegations of the petition for the reformation of the policy to accord with the contract made between the parties.

Appellant next complains of the introduction of evidence. In part this is predicated upon the same theory, namely, that defendant is bound by the language of the policy; but, since a cause of action for reformation of the policy was stated, evidence tending to support those allegations was proper. The court admitted evidence tending to show plaintiff had lost the beneficial use of the thumb and index finger. This evidence was proper as the issues were framed. Plaintiff testified to pain in an attempted use of the thumb and finger. Defendant objected to that, and the court told the jury this was not an action for damages, hence that nothing could be allowed for pain, and the evidence pertaining thereto should be disregarded.

Appellant contends the demurrer to the evidence should have been sustained; but this was properly overruled. Whether plaintiff lost the beneficial use of his thumb and index finger was a question of fact for the jury. (See cases above cited.) It was submitted to the jury under appropriate instructions. The jury found plaintiff had sustained such loss, and this finding is supported by the evidence.

Some criticism is made of the instructions given by the court and of the form of special questions submitted to the jury. We have examined these and find nothing seriously wrong with them.

Appellant complains because the court allowed plaintiff an attorney's fee of $400. The statute (R. S. 1931 Supp. 40-256) is applicable to the case and authorizes the allowance. However, the court attempted to reserve authority to allow an additional attorney's fee to plaintiff in the event the defendant appealed the case to this court, and the judgment of the trial court should be affirmed. Appellant complains of that. The point is well taken. The statute does not give the court such authority. An attorney's fee in such cases should be allowed at the time of judgment so that defendant may appeal from that as from other parts of the judgment. Appellant raises a question brought out in the evidence concerning the contract for attorney's fees between plaintiff and his attorneys. The statute allowing attorneys' fees in these cases is designed, generally speaking and in the ordinary cases, to allow plaintiff to receive for himself the full amount of his loss without having to pay a part of it for attorneys' fees. Whether the contract between plaintiff and his attorneys is one that is fair and proper is not a matter with which appellant is concerned. Since no one else is complaining of it here, it is not properly before us, and for that reason we decline to pass upon it.

As it pertains to appellant, there is no error in the record, except the reservation of the trial court to allow additional attorneys' fees. On this point the judgment of the court below is reversed. In all other respects it is affirmed.