Fidelity and Casualty Company of New York v.
John A. Getzendanner et al.

No. 884. Decided April 5, 1900.

**1. Accident Insurance—Total Disability—Charge.**

In an action on an accident policy securing a weekly indemnity for injuries which should "wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation," a charge authorizing recovery if insured was disabled and prevented from performing such duties "in a manner reasonably as effective as * * * if he had not sustained such injury," is erroneous. (Pp. 496, 497.)

**2. Same.**

Such charge can not be justified by the fact that the alleged disability was a mental one,—the gradations in mental deteriorations being infinite, as in physical. (P. 497.)

**3. Same.**

It seems, however, that in the description of the disability for which indemnity is provided in an accident insurance policy, the language "wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupations" is not to be taken literally. (P. 497.)

Certificate of dissent from the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

*Harris, Etheridge & Knight,* for appellant.—To entitle plaintiff and intervener to a recovery it was incumbent upon them, in view of the stipulations contained in the policy, to establish that the assured sustained such bodily injuries through external violent and accidental means as, independently of all other causes, immediately, continuously, and wholly disabled and prevented him from performing any and every kind of duty pertaining to visiting yards and ranches and buying and selling cattle not in transit, and it was error for the court to authorize a recovery if the assured was disabled and prevented from performing any and every kind of duty which was materially essential to his occupation stated in the policy "in a manner reasonably as effective as the same would have been performed by him had he not sustained injury," in that such charge did not confine the right of recovery to the event of total disability but authorized a recovery for partial disability in contravention of the stipulations contained in the policy. Saveland v. Fidelity and Casualty Co., 58 Am. Rep., 863; Am. Dig. for 1895, p, 2491, sec. 687; 1 Am. and Eng. Enc. of Law, 2 ed., 298, note 3; Accident Assn. v. Millard, 43 Ill. App., 148; Ford v. Accident Co., 148 Mass., 153; Knapp v. Accident Assn., 53 Hun, 84; Gracey v. Accident Assn., 21 Pittsb. L. J., 25; Merrill v. Insurance Co., 64 N. W. Rep., 1039.

*Flournoy & Altman,* for appellee.—The assured is wholly disabled and prevented from performing any and every kind of duty pertaining to his occupation when he can not perform any and every such duty materially essential to his occupation, substantially, that is, reasonably as effectively as he performed such duties before the injury. Lobdill

v. Laboring Men's Assn., 71 N. W. Rep., 696; Young v. Insurance Co., 80 Me., 244; Thayer v. Standard Life, etc., Co., 41 Atl. Rep., 182; Wolcott v. United Life Assn., 8 N. Y. Supp., 263; Hohn v. Casualty Co., 72 N. W. Rep., 1105; Baldwin v. Accident Assn., 46 N. Y. Supp., 1016.

To construe the clause in controversy in accordance with the contention of appellant, would be to require that the assured, before he can recover on his policy, be reduced to a state of complete paralysis of body and mind,—that he suffer, virtually, physical death; for if the injured person, though in the throes of dissolution, be able to give a word of intelligent direction concerning his business, or make one movement in his handicraft, he is not, according to this interpretation, wholly disabled from performing any and every duty pertaining to his occupation. It is needless to cite authorities that in doubtful cases such policies are to be construed most favorably to the assured. May on Ins., sec. 175. The policy in question was intended to insure against more than death of the assured. The clause under review was certainly meant to cover a disability something short of practical physical dissolution. Clay v. Insurance Co., 25 S. E. Rep., 417.

If, then, appellant's construction is rejected, where will the law set the limit? It would not be in consonance with the reason or the principles of the law to attempt to define the intermediate stages between absolute mental and physical collapse and full powers. It can only safely declare, that when one is incompetent to substantially perform his duties, he is disabled, and when he can not by any effort, however honestly or strenuously made, perform those duties in a manner reasonably as effective as before, he is wholly disabled. The cases cited in this brief exhibit some variety of opinion as to how the clause in question should be applied to the facts in issue. Some hold that incapacity in one or more material and essential functions of a business amounts to total disability as to any and every function pertaining to such business; but the vital principle involved in all is that if the assured is prevented from substantially carrying on his business, whether by literal total disability as to one or more important duties, or by inability to perform reasonably as effectively as before any and every such duty, he is wholly disabled within the meaning of this policy of insurance. It would seem that the charge of the court in the case at bar presents the principle in a more logical and comprehensive form, and is a better expression of it in its general application to all cases which may arise under the clause in question, than the instructions reviewed in the authorities cited above. It will be remembered, too, that the charge complained of by appellant is directed to a state of facts which show the injury to be one which affected the brain, and, when the assured found his mental powers impaired to that extent that he could perform none of his duties reasonably as effectively as he had before, it would appear that, with the shadow of insanity hovering over him, it was high time for him to

cease from his labors and to declare himself totally disabled in any and every particular relating to his business.

The majority and dissenting opinions, upon which this case was certified, were as follows:

"STEPHENS, ASSOCIATE JUSTICE.—The accident policy declared on insured John A. Getzendaner in the sum of $25 per week against bodily injuries sustained through external violent and accidental means, as follows, quoting its second clause:  'Or if such injuries, independently of all other causes, shall immediately, continuously, and wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation, the company will pay the assured the weekly indemnity before specified, during the continuance of such disability, but not exceeding fifty-two consecutive weeks.'

"The occupation of the assured was that of 'visiting yards and ranches, buying and selling cattle not in transit.'  During the life of the policy, about January 10, 1897, while engaged in driving a cow on horseback, the assured, his horse stumbling, fell to the ground, and though there were then no signs of physical injury, on the first day of March following became wholly insane and has ever since been confined in the lunatic asylum.

"According to the agreed statement of facts, whether this insanity was caused by the fall from the horse, or whether the assured 'for a month or six weeks after the accident was up and about and attending to his business,' were controverted issues, upon which the testimony would have sustained a verdict either way.

"The fourth paragraph of the agreed statement of facts reads:  'The testimony was conflicting as to whether the injury of the assured resulting from the accident, did or did not, independently of all other causes, immediately, continuously and wholly disable and prevent him from performing any and every kind of duty pertaining to his occupation, but there was sufficient evidence to support a verdict for either party upon this issue.'

"There was no other controverted issue of fact.

"The main contention of appellant is that the court erred in submitting the issue of total disability to the jury, the charge reading:

" 'If you believe from the evidence that John A. Getzendanner sustained the injury alleged in plaintiff's petition through external violent and accidental causes in the manner alleged, and that such injury independently of all other causes immediately and continuously after such injury was sustained, disabled and prevented said John A. Getzendanner from performing any and every kind of duty which was materially essential to his occupation stated in the insurance policy introduced in evidence, in a manner reasonably as effective as you believe the same would have been performed by said John A. Getzendanner if he had not sustained said injury, then you will find for the plaintiff and inter-

vener against the defendant for the sum of twenty-five dollars per week for each and every week, not to exceed fifty-two consecutive weeks, that said John A. Getzendanner was so disabled. The word "immediately" in the sense used above and in following portions of this charge refers to the proximity of time with the alleged injury and means the same as the word "presently." The burden is upon the plaintiff and intervener to make out their case by a preponderance of the evidence, and if they have not done so you will find for the defendant.

" 'You will find for the defendant unless you believe from the evidence that the disability, if any, of John A. Getzendanner alleged in said petition immediately followed the injury, if any; or unless you believe that said injury, if any, independently of all other causes, continuously disabled and prevented said Getzendanner from performing any and every kind of duty materially essential to his occupation in a manner reasonably as effective as you believe he would have performed the same but for said injury; or unless you believe that said injury, if any, was sustained from external violent and accidental means.'

"In so far as this charge instructed the jury that appellee's case would be one of total disability, if the injury complained of prevented him from performing the duties of his occupation 'in a manner reasonably as effective as  *  *  *  he would have performed the same but for said injury,' it had the effect of making partial disability the equivalent of total disability, and was therefore clearly erroneous. The vice of the charge is in the language just quoted. The cases cited in appellees' brief to sustain the charge, so far from doing so, are quite to the contrary, the language of the policy in one of them, Hohn v. Interstate Casualty Co. (Mich.), 72 N. W. Rep., 1105, being identical with the clause construed in this case. See, also, Lobdill v. Laboring Men's Association (Minn.), 71 N. W. Rep., 696.

"But whether this error should require a reversal of the judgment is another question. It seems from the condensed statement of facts that the evidence was such that the jury might have found that appellee 'for a month or six weeks after the accident was up and about and attending to his business,' but might have also found that he was not; but whether or not there was any evidence from which the jury might have found that he was 'up and about and attending to his business' less effectively than he would have attended to the same but for said injury, the record is wholly silent. · We are therefore unable to determine whether there was any evidence of partial disability, as contradistinguished from total disability. That is to say, the testimony of the witnesses relied on by the appellant may have been to the effect that for six weeks after the accident he was attending to his business in the usual way and as effectively as ever, while that relied upon by appellee may have warranted the jury in finding that he could not and did not attend to it at all after the accident.

"The error in the charge therefore may have been purely abstract. We hardly think that we would be warranted in reversing the judgment

upon the assumption that there might have been evidence of partial disability, as contradistinguished from total disability. It is incumbent upon the party seeking the reversal of a judgment to show by the record the materiality of the error of which he complains. True, it may be said that, if no such issue was presented by the evidence, that would itself be an insuperable objection to the charge; but we have searched appellant's brief in vain to find any complaint of the charge upon that ground.

"None of the other assignments are well taken. The judgment is therefore affirmed."

Filed November 4, 1899.

### ON MOTION FOR REHEARING.

"STEPHENS, ASSOCIATE JUSTICE.—We have concluded that our construction on the original hearing of the agreed statement of facts in this case, to the effect that it did not show that the issue of partial disability was raised on the trial, was rather too strict, and particularly so in view of the fact that in briefing the issues both parties have treated it as being sufficient. The language of the fourth paragraph of the agreed statement will admit of the construction thus mutually given it, and we are therefore of opinion that in disposing of the appeal we too should give it that construction.

"The practice of abbreviating the statement of facts by mutual agreement is to be commended. It is only where there is no statement of facts, or where it affirmatively appears from the statement of facts that the error complained of is merely abstract, that the appellate court is warranted in disregarding as immaterial errors in the charge. In the absence of a statement of facts, we may ordinarily presume that the evidence was such as to render such errors entirely harmless, for it is the duty of the party complaining to bring up a statement of facts, if he seeks a reversal upon such ground; but this principle is inapplicable where, as in this case, there is an agreed statement showing in general terms, without setting it out, what the evidence tended to prove, and which is treated by the parties to the appeal as showing that a given issue was raised, the language of the agreement being broad enough to cover it.

"The motion for rehearing will therefore be granted, and the judgment reversed and the cause remanded, for the error indicated in the original opinion."

Filed December 2, 1900.

### DISSENTING OPINION.

"HUNTER, ASSOCIATE JUSTICE.—Upon a second reconsideration of this case, and a very able re-argument of the vital questions at issue by appellees' counsel, and the citation of at least one new authority which

seems to be in point and upon a policy containing the exact clause under consideration here, I have become convinced that we were in error in condemning the charge of the court as we did in our original opinion. I am now of opinion that the charge of the court relating to and in effect defining the terms 'wholly disabled' as used in the policy was substantially, if not exactly, correct.

"In this case the alleged injury was to the brain, and, as resulting therefrom, unsoundness of mind. The agreed statement of the proof is that the evidence was sufficient to sustain a finding either that the disability caused by the accident was immediate and *total* or that it was not. The suit was to recover for immediate and *total* disability,—not partial. The policy contained no clause promising indemnity for partial disability. The question before us, then, is whether the charge properly submitted this issue to the jury.

"The court told the jury that if the injury 'immediately and continuously  *  *  *  disabled and prevented Getzendanner from performing any and every kind of duty which was materially essential to his occupation  *  *  *  in a manner reasonably as effective as you believe the same would have been performed  *  *  *  if he had not sustained said injury, then find for the plaintiff and intervener,' and to find for defendant company unless they so believed.

"Plaintiff's occupation was that of 'visiting yards and ranches and buying and selling cattle,' one in which sound memory and clear, good judgment were essential. Now, if the injury to his brain and mind was such as to prevent him from exercising good judgment and drawing correct mental conclusions, 'in a manner reasonably as effective' as he could have done if he had not received the injury, then, I think, he was 'wholly disabled,' within the meaning of the contract, because upon these qualities of the mind depends the successful performance of the duties of his occupation. If he could not perform these mental functions as well as he did before, but substantially or reasonably as well, the disability would be only partial, and he could not recover; but if he *could* perform them, though not *substantially* or *reasonably as effective,* who can say that he could perform them *rightly* and *correctly* at all ? He may be able to talk (which would be one of the duties pertaining to his occupation) as well as he ever did—lunatics do that— and thus fix and agree upon prices to give or take for cattle, but the memory and judgment being confused or obscured he may agree to give too much or take too little, and thus ruin himself or his employers. And who can say that, being in this condition, he is not 'wholly disabled?' One of his duties was to 'visit yards and ranches' in the purchasing and selling of cattle. His ability to visit may not have been in the slightest degree affected, but if, when he finds the cattle, his mental condition is such as to render him not reasonably safe and reliable as a purchaser, he would be wholly disabled from performing the duties of his occupation. Nobody knowing his disorder would employ him to buy or sell cattle. If a doctor's mental balance is lost, and it becomes

known that he is not reasonably as accurate and skillful as he once was, though he may be able to visit patients, write prescriptions and diagnose cases with grave and serious mien in the mysterious, technical nomenclature of his profession; yet who, suspecting his mental disorder, would take his medicine? He would be wholly disabled in his profession.

"The watch is a timekeeper, but by an accident an axle is bent or a wheel broken, so that sometimes it slips a cog, or a wheel slips upon its axle. It may run as well as before the accident, but fail to keep the time. Sometimes it goes too fast; sometimes too slow. It becomes wholly worthless as a timekeeper.

"The compass of an American liner may be accidentally injured, so that its face and needle need adjustment. It may continue to point out to the pilot his supposed proper course across the trackless waters of the Atlantic, but his ship may founder in the Bay of Biscay, instead of anchoring in its destined port in the mouth of the Mersey. That compass is wholly disabled for marine service.

"The fine rifle may be bent or warped by some accidental injury. Its shot is as deadly and penetrating as before, but it misses its aim. It becomes wholly worthless, fit only for the junk heap.

"When the delicate instruments used by astronomers for sweeping the heavens and measuring the distances from star to star receive the slightest injury, they are laid aside as utterly worthless for the observatory.

"And so, I think, when those delicate and wonderful faculties conprising the human intellect, which we understand in some mysterious way proceed from that organism known as the brain, become warped and bent and disordered, so that the lamp of reason goes out or flickers low in the socket, the poor unfortunate one thus injured is wholly unfit to perform those high mental functions known to a sound intellectual man, though he may not, like Getzendanner, be condemned to hopeless insanity and despair.

"The clause in this policy does not mean that one must be killed or become totally insane immediately, or totally paralyzed or collapsed, in order to be entitled to the indemnity, but only disabled in some manner to the extent that he can not perform some essential duty in the line of his occupation or profession in a reasonably safe, efficient, and profitable manner. And this question as to the extent of the disability must always be left to the jury to determine. The adjudicated cases on the subject tend strongly, I think, to this conclusion.

"In Young v. Travelers Insurance Company, 80 Maine, 244, where the policy against accidents provided that 'if the insured shall sustain bodily injuries * * * which shall, independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured,' a certain sum of money should be paid him; held, 'that, to entitle the insured to recover, he was not required to prove disability to such an extent that he had no physical ability to do anything in the prosecution of his business, but that it was sufficient if he satis-

fied the jury that his injury was of such a character and to such an extent that he was not able to do all the substantial acts necessary to be done in the prosecution of his business.'

"In Lobdill v. Laboring Men's Mutual Aid Association, 71 Northwestern Reporter, 696, the Supreme Court of Minnesota held, where the policy insured the plaintiff against loss of time caused by accidental injuries 'wholly and continuously disabling him from transacting any and every kind of business pertaining to his occupation of merchant,' that 'total disability does not mean absolute physical inability to transact any kind of business pertaining to the occupation of merchant. It is sufficient if his injuries were such that common care and prudence required him to desist from transacting any such business in order to effectuate a cure.'

"In the case of Hohn v. Interstate Casualty Company, 72 Northwestern Reporter, 1105, the Supreme Court of Michigan held that where the evidence established that 'after the injury to a barber, he went to his shop and attempted to do some work, but he suffered such pain that he fainted, and was sent home in a hack. During the week he was somewhat better, and visited his shop each day, suffering pain all the time, and occasionally working a little, but was unable to perform all of his duties because of pain, and after that he was compelled to remain in bed for some time. Held, he was totally disabled within the meaning of an accident policy insuring against total disability only.' The clause in the policy was identically the same as is contained in the policy under consideration here.

"In Thayer v. Standard Life and Accident Insurance Company, 41 Atlantic Reporter, 182, the Supreme Court of New Hampshire said: 'As long as one is in full possession of his mental faculties, he is capable of transacting *some parts* of his business, whatever it may be, although he is incapable of physical action. If the words "wholly disable him from transacting any and every kind of business pertaining to the occupation under which he is insured," were to be construed literally, the defendant would be liable in no case, unless by the accident the insured should lose his life or his reason. Hooper v. Insurance Co., 5 Hurl. & N., 545. It is certain that neither party intended such a result. It can not be said as matter of law that the plaintiff's disability was not sufficient to entitle him to compensation under the terms of the policy.'

"In the case cited the evidence showed that the plaintiff's shoulder was accidentally injured by a fall, causing him pain and depriving him of the use of the arm. He was disabled thereby from attending to his business—that of a shoe dealer—although he went to his store two or three times a week. The policy insured the plaintiff 'against loss of time * * * resulting from bodily injuries * * * which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to the occupation under which he is insured.'

"The same language was contained in the policy under consideration

in Preferred Accident Insurance Company v. Gray, 26 Southern Reporter, 517, in which case the plaintiff was a physician and was injured by an accident while riding on an electric car on June 25, 1896. He sued to recover indemnity for loss of time from his practice during July, August, and September of said year. The evidence showed he was often seen on the streets of Birmingham during said period of time, and between July 30 and September 29, 1896, he gave prescriptions in certain cases to the number of fifty, which were gathered from the drug stores and identified and read in evidence; but *he* testified that he was wholly disabled from practicing his profession during said months, and did not charge for the prescriptions shown in evidence. The Supreme Court of Alabama, in June, 1899, reversed a judgment in his favor because the court allowed him to testify that he did not charge for the prescriptions, but said with reference to the sufficiency of the evidence to require the issue to be submitted to the jury: 'There was evidence in support of the complaint, and it was sufficient not only to go to the jury, but to afford justification here for the refusal of the trial court to grant a new trial. There was no error in refusing to give the affirmative (peremptory) charge for defendant or in the denial of that motion.'

"In the case of Wolcott v. United States Life and Accident Association, 8 New York Supplement, 263, the court say: 'Total disability must, of the necessity of the case, be a relative matter, and must depend largely upon the occupation and employment in which the party insured is engaged. * * * If a person engaged in the general practice of medicine is unable to go about his business, enter his office, and make calls upon his patients, but is confined to the bed, as in this instance, and enabled only to exercise his mind on occasional applications to him for advice, he may be said to be totally disabled within the meaning of the provision of this policy.'

"Substantially the same view was taken of the question by the court in Baldwin v. Fraternal Accident Association, 46 New York Supplement, 1016, where the court said, in discussing the meaning of a clause substantially the same as the one here under consideration, that the insured is wholly disabled when he is deprived of the power to perform substantially all the duties of the occupation under which he is insured, adopting the rational doctrine that substantial disability is total disability, which seems to me the only reasonable construction which can be given to such policies.

"These cases are sufficient to show the trend of judicial decisions on contracts of the character sued on. The companies have all the time contended for a literal construction, while the courts have uniformly adopted a liberal and reasonable one. In every case above cited, if the literal construction contended for by the companies had been adopted by the courts, a peremptory charge should have been given to find for the defendant company, because the evidence in every instance was undisputed that the party injured was able to, and did, perform some business or duty pertaining to his occupation or profession, and was not

*wholly disabled* within the strict sense of the terms from performing any and every kind of duty or business pertaining to his occupation or profession.

"In this case Getzendanner's injury was one to the brain—to the mind. Within a few weeks he was judicially declared insane, confined in one of the lunatic asylums of the State, and is still hopelessly insane and so confined. It is agreed that the evidence was sufficient to authorize the jury to find that his insanity was produced by the accidental injury. There can be no question that if this mental disorder existed to the extent named from the time of the accident, or substantially from the time of the accident, he was wholly disabled in every sense of the terms. But I am of opinion that if a person is injured mentally to the extent and character that he can not perform some of the essential or material duties pertaining to his occupation or profession under which he is insured, which requires the exercise of a sound mind and good judgment, in a manner substantially or reasonably as effective as he could have done but for the injury, then he is wholly disabled within the meaning of this contract, and is entitled to recover the indemnity stipulated for in the policy.

"The motion of appellees for a rehearing, in my opinion, ought therefore to be granted, and the judgment of the District Court affirmed."

Filed February 10, 1900.

GAINES, CHIEF JUSTICE.—This case comes to us upon a certificate of dissent. The point upon which the dissent arose is thus stated in the opinion of the majority of the court:

"The accident policy declared on insured John A. Getzendanner in the sum of $25 per week against bodily injuries sustained through external violent and accidental means, as follows, quoting its second clause: 'Or if such injuries, independently of all other causes, shall immediately, continuously, and wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation, the company will pay the assured the weekly indemnity before specified, during the continuance of such disability, but not exceeding fifty-two consecutive weeks.'

"The occupation of the assured was that of 'visiting yards and ranches, buying and selling cattle not in transit.' During the life of the policy, about January 10, 1897, while engaged in driving a cow on horseback, the assured, his horse stumbling, fell to the ground, and, though there were then no signs of physical injury, on the first day of March following became wholly insane, and has ever since been confined in the lunatic asylum.

"According to the agreed statement of facts, whether this insanity was caused by the fall from the horse, or whether the assured 'for a month or six weeks after the accident was up and about and attending to his business,' were controverted issues, upon which the testimony would have sustained a verdict either way.

"The fourth paragraph of the agreed statement of facts reads: 'The testimony was conflicting as to whether the injuries of the assured resulting from the accident, did or did not, independently of all other causes, immediately, continuously, and wholly disable and prevent him from performing any and every kind of duty pertaining to his occupation, but there was sufficient evidence to support a verdict for either party upon this issue.'

"There was no other controverted issue of fact.

"The main contention of appellant is that the court erred in submitting the issue of total disability to the jury, the charge reading: 'If you believe from the evidence that John A. Getzendanner sustained the injury alleged in plaintiff's petition through external violent and accidental causes in the manner alleged, and that such injury, independently of all other causes, immediately and continuously after such injury was sustained, disabled and prevented said John A Getzendanner from performing any and every kind of duty which was materially essential to his occupation stated in the insurance policy introduced in evidence, in a manner reasonably as effective as you believe the same would have been performed by said John A. Getzendanner if he had not sustained said injury, then you will find for the plaintiff and intervener against the defendant for the sum of twenty-five dollars per week for each and every week, not to exceed fifty-two consecutive weeks, that said John A. Getzendanner was so disabled. The word "immediately" in the sense used above and in following portions of this charge refers to the proximity of time with the alleged injury and means the same as the word "presently." The burden is upon the plaintiff and intervener to make out their case by a preponderance of the evidence, and if they have not done so, you will find for the defendant.

" 'You will find for the defendant unless you believe from the evidence that the disability, if any, of John A. Getzendanner alleged in said petition immediately followed the injury, if any; or unless you believe that said injury, if any, independently of all other causes, continuously disabled and prevented said Getzendanner from performing any and every kind of duty materially essential to his occupation in a manner reasonably as effective as you believe he would have performed the same but for said injury; or unless you believe that said injury, if any, was sustained from external violent and accidental means.' "

The charge of the court was held by the court to be erroneous, but one of the judges dissented.

The case of Hooper v. The Insurance Company (4 H. & N., 546) is a leading case upon the subject of accident insurance. There, the plaintiff held a policy of the defendant company which entitled him to recover a certain sum per week in case he should receive by accident a bodily injury "of so serious a nature as to wholly disable him from following his usual business." His business was that of a solicitor. His ankle was severely sprained in an accident and he was confined to his room for some weeks,

being unable to get down stairs. It was conceded that he was able to receive his clients in his room and to advise them there; and yet the court held that he was "wholly disabled from pursuing his usual business," and that he was entitled to recover. The court seems to hold, that, within the meaning of the words as used in the policy, one may be "wholly disabled from pursuing his usual business," although he may be able to perform some of the functions pertaining to his occupation. It was perhaps to avoid this construction that, latterly, insurers against accidents to the person, instead of the words of the policy in the case cited or their equivalent, use the terms employed in the policy in controversy in the present case, namely, "wholly disable and prevent the assured from performing any and every kind of duty pertaining to his occupation," or words of the same import. The recent cases indicate that the latter terms are now very generally employed in accident policies of the character of that in question. Young v. Insurance Co., 80 Me., 244; Lobdill v. Aid Assn. (Minn.), 71 N. W. Rep., 696; Hohn v. Casualty Co. (Mich.), 72 N. W. Rep., 1105; Thayer v. Insurance Co. (N. H.), 41 Atl. Rep., 182; McKinley v. Insurance Co. (Iowa), 75 N. W. Rep., 670; Saveland v. Casualty Co., 67 Wis., 174. In each of the cases just cited, the language of the stipulation is the same or substantially the same as that in the policy now in controversy; and yet in each of them save two, the plaintiff was held entitled to recover, although he was not absolutely disabled to do some acts usually done by him in carrying on his occupation. In each of the two excepted cases (McKinley v. Insurance Company, and Saveland v. Casualty Company) a recovery was disallowed to the full extent of the demand made; but in these cases, under no admissible construction, could such a recovery have been properly awarded. The opinion of the Wisconsin court in the latter case, however, indicates that they were disposed to hold to a literal construction of the contract. If such be their opinion, it is, we think, opposed to the great weight of authority. But it is hardly necessary to pass upon the question discussed in either of the cases cited. The question of the correctness of the charge which has been quoted in the statement is that upon which there was a difference of opinion in the Court of Civil Appeals, and it is that question alone which we are called upon to determine; and, in our opinion, the charge under consideration is not sustained by the ruling of the court in either of those cases, or in any other to which we have been cited. To say that one who is disabled by an injury is wholly disabled to do a thing merely because he can not do it "in a manner reasonably as effective as the same would have been performed if the injury had not been sustained," seems to us a solecism in language, if it does not involve a contradiction in terms. A carpenter with a sprained finger might not be able to pursue his calling as effectively as if he had not received the injury, and, at the same time, he might be able to do without serious inconvenience ninety per cent as much work as he could have done before the accident happened. Clearly he would not be "wholly disabled and prevented from performing any and every

kind of duty pertaining to his occupation." And such is the case with many other physical injuries. The effectiveness of the performance may be impaired, although the injured person may not be wholly disabled to perform a duty.

The charge involves a technical error, as we think, and can only be justified upon the theory that the slightest impairment of the mental faculties wholly disables one who is engaged in buying and selling from pursuing his avocation. Such, however, is not the fact; for there are infinite gradations in mental deterioration, and it is a matter of common knowledge that persons with some degree of cerebral disturbance may continue to prosecute, with reasonable efficiency, a business which requires the exercise of judgment and discretion.

Our conclusion is that the majority of the court correctly held that there was error in the charge, and our opinion will be so certified.

*Affirmed.*