## Henderson v. Continental Casualty Company.

(Decided May 8, 1931.)

SHUMATE & SHUMATE for appellant.

CLARENCE MILLER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On February 2, 1928, the appellee issued its insurance policy insuring the appellant, "as a freight brakeman" in "class B and S" of the company and promising to pay him or his beneficiary the indemnities provided in it for "loss resulting from accident or sickness." The policy stated that the monthly sickness indemnity provided for therein, should be paid for the period not exceeding one year during which the insured should "be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of sickness," and, if the disability should continue for more than a year, then the company would pay one-fourth of such monthly sickness indemnity for so long as the disability should continue; no indemnity being payable for any period during which the appellant was not regularly treated by a licensed physician. As the policy stated, the appellant at the time of its issuance was a railroad brakeman, and he continued in that employment until the following August, when, because of color blindness, he had to give up his position. This color blindness was not caused by any accident, and was due to some defect in the eyes. It is a permanent condition. The appellant, however, was and is capable of performing and indeed did thereafter work in other occupations which did not require color sense on his part. He brought this suit upon the policy to recover the monthly indemnity for sickness. At the conclusion of his evidence, which showed substantially the foregoing facts, the court peremptorily instructed

the jury to find for the appellee, and, from the judgment entered on that verdict, he appeals.

It appears that the court peremptorily instructed the jury as it did because of the fact that appellant, although unable to follow his occupation as a railroad brakeman because of his inability to distinguish colors and hence read signals, is yet able to and does work in other occupations not calling for a sense of color on his part. It construed that part of the policy we have quoted reading "prevented from performing any and every duty pertaining to any business or occupation" in its literal sense. Such a construction obviously justified the position of the trial court. But this court has steadily declined to construe such a provision in an insurance policy in its literal sense. The question of what is total disability within the meaning of such a clause as quoted has a twofold aspect, quantity and quality. To what extent must an insured be disabled from doing anything before he can be called totally disabled? That is the aspect of quantity. What line or lines of work must he be unable to perform to come within the terms of his policy? That is the aspect of quality. How should such a clause in a policy such as we have quoted be interpreted from this aspect? In the case of National Life & Accident Ins. Co. v. O'Brien's Ex'x, 155 Ky. 498, 159 S. W. 1134, 1135, we said as to this:

"We are aware that the authorities differ as to the meaning that should be given such terms as are employed in the policy under consideration to indicate the nature and extent of the disability that result to the assured from accidental means in order to entitle him to the indemnity allowed by the policy. Some of the cases hold that there can be no recovery of the indemnity unless the disability is such as to prevent the assured from doing any kind of work in any way and all kinds of business or, in other words, disability to earn a livelihood at any employment. Hutchinson v. Supreme Tent, etc., 68 Hun. 355, 22 N. Y. S. 801; Baltimore, etc., Emp. Relief Ass'n v. Post, 122 Pa. 579, 15 A. 885, 2 L. R. A. 44, 9 Am. St. Rep. 147; Fidelity, etc., Co. v. Getzendanner, 93 Tex. 487, 53 S. W. 838, 55 S. W. 179, 56 S. W. 326; Merrill v. Travelers' Ins. Co., 91 Wis. 329, 64 N. W. 1039; Sawyer v. U. S. Casualty Co., 8 Am. Law Reg. (Mass.) 233; Albert v. Order Chosen Friends (C. C.) 34 F. 721. Other cases hold that it is only necessary

that the disability be such as to prevent the assured from following his particular occupation; and some of them, that a total disability exists if the assured's injuries are of such a character that common prudence requires him to desist from his labors and rest so long as it is reasonably necessary to effect a speedy cure. Young v. Travelers' Ins. Co., 80 Me. 244, 13 A. 896; Lobdill v. Laboring Men's Mut. Aid Ass'n 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542; Pennington v. Mut. Life Ins. Co., 85 Iowa, 468, 52 N. W. 482, 39 Am. St. Rep. 306; Com. Trav. Acc. Ass'n v. Springsteen, 23 Ind. App. 657, 55 N. E. 973; McKinley v. Banker's Aid Acc. Ins. Co., 106 Iowa, 81, 75 N. W. 670; Neafle v. Mfgt's Acc. Indemnity Co., 55 Hun (N. Y.) 111, 8 N. Y. S. 202.

"Without undertaking to harmonize the foregoing authorities, we are inclined to follow those last cited, as we regard them more in accord with reason and justice. The clause of the policy under which appellant seeks to escape liability, though broad enough in its terms to give color to the meaning it attributes to it, should nevertheless be given a reasonable construction that would be as just to the assured as to the insurer. . . .

"While the language of the policy here is that the disability, entitling the assured to the indemnity provided, must be so total as to prevent him from 'performing every duty to any business or occupation,' it would do no violence to the language used or the rights of appellant to say that the words quoted, fairly interpreted, should be held to mean that the disability would be total, if of such a character as to prevent the assured from transacting any kind of business pertaining to his occupation. In other words, it is sufficient if the disability of the insured in this case was such as to prevent him from doing all the substantial acts required of him in his business."

In the case of Ohio National Life Ins. Co. v. Stagner, 231 Ky. 275, 21 S. W. (2d) 289, 290, the insured at the time of the issuance of his policy was a farmer. After he was injured, he was unable to follow that occupation any further, although he was able to do some office work for his son who was in the transfer business. He brought suit on his insurance policy, which contained a clause

like the one here involved. It ,was held that Stagner was totally disabled within the meaning of his policy. We quoted the following from the case of Continental Casualty Co. v. Linn, 226 Ky. 328, 10 .S. W. (2d) 1079. An insurance policy must be interpreted according to its true character and purpose, and in the sense in which the insured had reason to suppose it was understood. The application of this liberal rule of construction has been made to varying provisions of insurance policies and the extent of recovery thereunder—specifically to the term 'total disability,' which is never given its strict literal meaning of absolute helplessness or entire physical disability, but rather as inability to do substantially or practically all material acts in the transaction of the insured's business in his customary and usual manner." Fidelity & Casualty Co. of New York v. Hart, 142 Ky. 25, 133 S. W. 996; Aetna Life Insurance Co. v. McCullagh, 195 Ky. 136, 241 S. W. 836; Fidelity & Casualty Co. of New York v. Logan, 191 Ky. 92, 229 S. W. 104.

In Foglesong v. Modern Brotherhood, 121 Mo. App. 548, 97 S. W. 240, 241, the court discussing the question now before us and refusing to hold that there could be no recovery if the insured was able to carry on any vocation, said:

"But we are unwilling to adopt such a doctrine, the effect of which would be, practically, to reduce all such contracts to nullities and to make them the instruments of extracting dues from policy holders without creating any liability on the part of the insurers. Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental inertia. We have examples of persons without hearing and without sight following a vocation—some without feet, and some without hands, engaged in business. The achievements of disabled persons are seemingly marvelous. Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling; in which instances, under the rule invoked, there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our

duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity. It has been said that: 'The policy is the law by which the mutual rights and liabilities of the parties are to be measured, and should be construed strictly against the insurer, where they narrow the range and force of the allegations or provides for forfeiture.' . . . The language of the policy, 'permanent and total disability of said member, which renders him unable to carry on or conduct any vocation or calling,' the vocation of the insured not being designated, should be construed as meaning, if anything, the vocation or calling in which he might be following at the time he became disabled, and not any vocation whatever which he might be able to follow after he had been disabled. . . . We have seen to what absurd consequences a literal construction of the language would lead.''

In the policy here involved, the appellee insured the appellant as the freight brakeman. Under our decisions, the clause of the policy here involved had a certain meaning in the law, and that was that the disability was total if the insured was unable to follow his usual occupation, although he might be able to do something else. Hence it follows that, as the appellant was unable to follow his occupation as a freight brakeman because of the disability to his eyes, he was totally disabled within the meaning of his policy.

The appellee argues, however, that the construction placed upon such such a clause as is here involved by our decisions should not be followed in this case because in that part of the policy referring to accident indemnity it was provided that the indemnity should be paid for such period of time as insured was wholly disabled from performing "each and every duty pertaining to *his occupation*" (italics ours), and that, since this language used in this part of the policy is different from that used in that part providing for sickness indemnity, it was clearly not intended that the two claims should be construed alike. But, as stated, a fixed construction in law had been placed on the language used in the sickness indemnity part of the policy, and that construction made it mean just what the accident indemnity part literally says, which, being true, there was no difference in law in the meaning of the two clauses. There being no differ-

ence in meaning, there was no such conflict as to require a different construction to be placed upon them, although they both appeared in the same policy. It follows that the trial court erred in peremptorily instructing the jury as it did unless appellee's argument that appellant failed to show that he had been treated throughout the period of disability claimed by a licensed physician and that appellant in his application for this policy gave false and fraudulent ·answers to questions asked him should prevail. As to the latter position, appellee did not plead nor rely upon such defense in the trial court. Hence it is not available. Ætna Life Ins. Co. v. McCullagh, 185 Ky. 664, 215 S. W. 821. As to the first argument, there was evidence tending to show that appellant had been treated by a licensed physician during the period of disability claimed. True it is that for a part of this period his doctor was treating his tonsils, but the evidence discloses that the doctor thought the eye trouble was caused by the blood being infected from the tonsils and the tonsil treatment was given in order to effect a cure of the eyes. The appellant was, on this branch of the case, entitled under his evidence to go to the jury.

The judgment is therefore reversed, with instructions to grant the appellant a new trial in conformity with this opinion.