## Aetna Life Insurance Co. of Hartford, Conn., v. Castle.

(Decided Jan. 9, 1934.)

EDWARD L. ALLEN for appellant.

W. J. WARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On September 17, 1923, Murner Castle was employed as a miner by the North East Coal Company. On that date the Ætna Life Insurance Company issued to the coal company a group policy insuring the lives of its employees against death and total and permanent disability in the sum of $500, with the provision that the amount of insurance upon all employees other than officers, superintendents, foremen, and store managers should be increased by successive amounts of $100 on each anniversary of the date of insurance for each additional year of continuous service until a maximum of

$1,500 was attained. The disability provision of the policy reads:

"If total disability of any employee entitled to insurance under the schedule of insurance contained in this policy begin before age sixty, and if due proof be furnished the company after such disability has existed for a period of six months, and if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy. * * *''

The group policy was delivered to the coal company, and certificates of insurance for the sum of $500 were issued to each of the employees, including Castle. Thereafter six additional certificates for $100 each were also issued to Castle; the last certificate being dated September 23, 1929.

In the year 1926 Castle was injured by being struck behind the ear with a machine jack. In the year 1927 he was struck over the eye with a wire hanger. He returned to his employment as a coal loader and worked regularly until he was injured in the year 1929 by being struck in the left eye by a block of coal. After the last injury, he again returned to work and remained in the employment of the company until August 29, 1930, when he was laid off on account of his condition. He again returned to work on December 17, 1930, and continued to work until January 21, 1931, when he was compelled to stop.

Liability having been denied, Castle brought this suit on March 14, 1932, to recover on the policy and certificates of insurance. In addition to an answer containing a general denial, the insurance company filed an amended answer, in the first paragraph of which it relied upon the following provision of the contract:

"If you are sick or absent on account of other excusable causes, you are required to report same immediately to this office. After ten days of unexplained absence it will be understood that you have left our employ and your insurance will be cancelled'';

and pleaded that plaintiff had been absent without explanation for longer than ten days, and had thereby

forfeited any and all rights under the contract. In the second paragraph of the answer, it relied upon the provision of the contract that the total and permanent disability must exist continuously for a period of at least six months prior to the institution of any suit by plaintiff, and that plaintiff's disability, if any, had existed for a period of much less than six months next before the filing of the suit. In the third paragraph of the amended answer, the insurance company pleaded that on January 1, 1932, in accordance with the terms of the policy, it, by notice duly mailed and delivered to the North East Coal Company, canceled the policy and all certificates issued thereon to plaintiff.

A trial before a jury resulted in a verdict and judgment for plaintiff in the sum of $1,200. The insurance company appeals.

There is no merit in the contention that the policy was canceled because of the unexplained absence of plaintiff for a period of more than ten days. No case of unexplained absence was presented. The uncontradicted evidence shows that at the instance of the coal company plaintiff was examined by physicians, and was laid off on August 29, 1930, on account of his disability, all of which was known to the coal company.

Alike untenable is the contention that the insurance was no longer in force because plaintiff left the company's employ on August 29, 1930, and did not resume his employment until December 17, 1930. Prior to that time, and while the policy was still in force, he had received the injuries resulting in his disability. He was not finally discharged, but was merely laid off and resumed his employment without again signing the compensation register. It would hardly comport with a fair construction of the policy to hold that one who had received injuries resulting in his disability while the policy was in force, and was temporarily laid off on account of such disability, was no longer in the service of his employer, and therefore not entitled to the benefits of the contract.

The further point is made that appellant was entitled to a peremptory instruction on the ground that the evidence was insufficient to make out a case of total and permanent disability. On this question Castle, after describing his injuries, testified that he was laid off because he was disabled. At that time he was not

able to do any work. Since then, he had helped in raising corn and planting a truck garden, but could not do much. Dr. J. A. Wells testified that he found Castle's ear in a bad, ruptured condition, and Castle could not hear good from that ear. His hearing would probably keep him from working, and it would be dangerous with the condition of his sight and hearing for him to do any work in the mine. He would not say that there were odd jobs around the mine that he might do with safety. According to Dr. F. M. Pickelsimer, he found Castle suffering from an infection of the middle eardrum, with pus running out of the ear. He was also suffering from trachoma and cataract of the left eye, practically excluding all vision from that eye. He found him undernourished and nervous. Castle could do some light duties on a farm, but was disabled from carrying on the ordinary work of a miner. In his opinion, Castle's condition was permanent. Dr. W. R. Castle testified that Castle was permanently and totally disabled as a laborer in the mines, but thought that he could do some work on the farm.

According to Dr. D. H. Daniel, he found Castle suffering from otitis media of the middle left ear and impairment of the vision of the left eye. He was also undernourished and nervous. It was dangerous for Castle to work in the mine, as he was liable to get killed. His hearing was impaired about 75 per cent. and his eye about 50 per cent. According to Jim Castle, when plaintiff would go to work, pus would run out of his ear and he would get sick and have to quit. R. C. Thomas, superintendent of the coal company, testified that Castle was taken out of the service on account of his hearing and eye, as they thought it was too much danger for him to work in the mine. Dr. E. E. Archer gave it as his opinion that Castle was not permanently and totally disabled "from performing any labor for wages or profit." There were many jobs around the mines that he could do. In his opinion, Castle could get along all right on a farm. It was necessary for one working on the inside of the mine to have good hearing and sight, but there were other jobs where the danger would not be present. Castle could go out in a gin crew and do work like that. If working on a farm caused his head to hurt and the pus to run from his ear, he would say that Castle could not work on a farm. Dr.

P. B. Hall testified that there were a few things that Castle could do for profit, such as chores about the house, or selling books, or something of that nature. He could care for stock on the farm, cattle, and horses, get in wood, and do things like that. If Castle asked him if he was able to work in the mines, he would tell him that he was not able, that it would be dangerous both to him and the other men. He would not advise Mr. Castle to work out in the weather. He would get cold, and it would cause his health to give him trouble. On being recalled, Dr. E. E. Archer gave it as his opinion that he did not believe that Castle could perform substantially or practically all material acts in the transaction of his regular occupation.

As has often been declared by this court, the words "total disability" within the meaning of a policy like the one in question do not mean absolute helplessness, but rather the inability to do substantially or practically all material acts in the transaction of the insured's regular occupation or business in the usual and customary manner. Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216; Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209. Clearly, this is not a malingering case. Castle was a faithful employee for many years. Notwithstanding his several injuries, he always returned to work and did his best. Appellant itself proved that he was laid off because his condition was such as to make it dangerous for him and the other miners for him to continue at work. The weight of the evidence is that he was unable to do the work of a miner. The most that can be said of the evidence to the contrary is that he might do odd jobs around the mines, or might do light work on a farm or engage in selling books, or some other work of that nature. It hardly can be said as a matter of law that a miner who can only do odd jobs around the mine, or engage in light work wholly foreign to his usual occupation, is not totally disabled within the meaning of the policy. On the contrary, we are of the opinion that the evidence of total disability was sufficient, not only to take the case to the jury, but to sustain the verdict.

Complaint is made of the fact that the court permitted a lay witness to state that in his judgment Castle was not able to work when he was laid off, and also to state that prior to his injuries Castle had reasonably good health, and after his injuries his health appeared

to be bad. We need go no further than to say that the other evidence to the same effect is so overwhelming that the opinions expressed by the witness, even if he was not qualified to speak on the subject, were not prejudicial.

Another witness was permitted over the objections and exceptions of appellant to testify that he had been told by the assistant mine foreman that he had orders from the mine foreman to give the men orders to look after Castle when they were working with him. It must be conceded, of course, that this evidence was pure hearsay, and therefore inadmissible. However, inasmuch as appellant introduced evidence to the effect that Castle was laid off because it was dangerous, not only to him, but to the other miners, for him to continue his work, it is not perceived how the admission of the evidence adversely affected appellant's rights.

By instruction No. 3, the jury were authorized to find for plaintiff in the sum of $1,200 "if they should believe and find from the evidence that the plaintiff, at least six months before March 14, 1932, became totally and permanently disabled," etc. The instruction is assailed on the ground that it authorized a finding for plaintiff, even though he was totally disabled between January 1, 1932, and March 14, 1932, during which time he was not in the service of the coal company. Doubtless the instruction is technically incorrect, but, in view of instruction No. 1, which told the jury that the policy was canceled on January 1, 1932, and that if they should believe from the evidence that plaintiff's permanent and total disability, if any, originated or began for a period of less than six months next before January 1, 1932, they should find for the defendant, and of the uncontradicted evidence to the effect that plaintiff's disability began much more than six months before the policy was canceled we are constrained to hold that the defect in the instruction was not prejudicial to appellant's substantial rights.

Lastly, it is insisted that instruction No. 3 is also erroneous, in that it authorized a recovery of $1,200. The ground of this attack is that, at the time plaintiff was discharged from the service of the coal company on August 29, 1930, he was carrying insurance of only $1,100, and was not entitled to an additional $100 certificate on September 17, 1930, and none was issued.

The evidence does not show that Castle was permanently discharged on August 29, 1930. On the contrary, he was temporarily laid off on account of his disability and permitted to return to work on December 17, 1930. He then worked until January 21, 1931, when he was finally discharged on account of his inability to work. It was not shown that the coal company effected the cancellation of insurance on Castle by the return of the card for such individual insurance with the form thereon entitled "Notice of Discontinued Employment" properly filled out and signed by it as provided by the policy, and we are not inclined to hold that, in the absence of such notice, an employee who is temporarily laid off on account of disability, and thereafter permitted to return to work, is no longer in the service, and therefore not entitled to insurance. On the contrary, it is clear that Castle was entitled to $100 additional insurance on September 17, 1930, even though no certificate therefor was issued to him. It follows that the instruction was not erroneous in authorizing a recovery of $1,200.

Judgment affirmed.