## WRAY v. METROPOLITAN LIFE INS. CO.

Western Section. August 3, 1935.

Petition for Certiorari denied by Supreme Court, January 11, 1936.

W. Curtis Pope and W. T. Roop, both of Memphis, for plaintiff in error.

Overton Butler, Larry Creson, and Sivley, Evans & Evans, all of Memphis, for defendant in error.

KETCHUM, J.   In this case Wray sued the insurance company to recover certain disability benefits alleged to be due him in accordance with a group insurance policy issued by the defendant to the St. Louis-San Francisco Railway Company for the benefit of certain of its employees, including the plaintiff. The certificate issued to the plaintiff was for $7,000, but was payable in 60 monthly installments of $126.   The pertinent provision of the group policy is that relative to ''Total and Permanent Disability Benefits,'' which reads as follows:

''Upon receipt, at the Home Office in the City of New York, of due proof that any employee, while insured hereunder, and prior to his sixtieth birthday, has become totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation and profit, the company will, in lieu of payment at death of the insurance on the life of the said employee, or to a person designated by him for the purpose, or, if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record of the said employee.''

The defendant pleaded the general issues of non assumpsit and nil debet, and pleaded specially that the plaintiff had not been totally and permanently disabled, as the result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit.

The case was tried to a jury.   At the close of the plaintiff's proof the court sustained a motion made by the defendant for a directed verdict in its favor, and dismissed the plaintiff's suit.   The plaintiff seasonably filed a motion for a new trial which was overruled, and he has appealed in error to this court.   There are several assignments of error here, all based upon the action of the court in sustaining the defendant's motion for a directed verdict.   The facts are undisputed; and the only question here is whether there is any evidence

to support the plaintiff's contention that during the period of his employment, and after the issuance of said certificate to him, he became "totally and permanently disabled as the result of . . . disease, so as to be prevented thereby from engaging in any occupation and performing any work for compensation and profit."

The material facts are as follows:

The plaintiff had been engaged in railroad work practically all of his business life, and had been a switchman for about 20 years before he was discharged by the St. Louis-San Francisco (Frisco) Railroad. He had been employed by the Frisco since October 1, 1926, as switchman or relief yardmaster. In his application for this group insurance, dated October 17, 1929, he gave his occupation as yardmaster, and in his testimony he says that the duties of switchman and yardmaster are the same. He was discharged by the Frisco for color blindness on June 7, 1930. Because of this condition he could not distinguish green from red, and therefore could not distinguish the signal lights. Good vision is very necessary for a switchman, and the railroad company physician examined the eyes of the switchmen for color blindness about every two years. About May 1, 1930, the doctor's car came to Memphis and the doctor in charge examined the plaintiff's eyes, and told him to report to the company oculist, Dr. Howard. Dr. Howard examined him and found him to be color-blind, and his vision somewhat impaired, and referred him to the chief surgeon of the Frisco at St. Louis. He was there examined by Dr. Jennings, who also found him to be color-blind, and that his vision was impaired, and upon the chief surgeon's report he was discharged on June 7, 1930.

The suit was brought November 21, 1933. There is evidence that plaintiff's color blindness and impairment of his vision is due to disease. The trouble with his eyes has been progressive, to such an extent that at the time of the trial, in November, 1934, he was practically blind. The condition is permanent.

In September, 1930, the Frisco employed the plaintiff as a crossing watchman, in which position it was his duty to let down a gate or bar across the street when a train was approaching his crossing. He was still holding this position at a salary of $57 per month when this suit was brought.

The plaintiff was discharged as switchman solely because of his color blindness. His general health was good, and the only reason assigned for discharging him was that he was color-blind. He was not quite 43 years of age at the time.

Under the terms of the policy here under consideration, the test of total disability is whether the condition of the insured is such as that by reason of his color-blindness he is prevented from engaging in any occupation and performing any work for compensation

or profit. Such a form of policy must be distinguished from another class of policies in which the test is whether the condition of the insured is such as to prevent him from transacting all kinds of business or work pertaining to his occupation. The failure to recognize this distinction has led to some confusion in the decisions of the courts on the subject. The meaning of the words "total disability" under one form of contract is quite different from the meaning of the same words under the other. For this reason the definitions of the words "total disability" as given by the courts are of little value, because in each instance the meaning of the phrase is determined by the language of the particular policy under discussion. What we have to determine here is the meaning of the words "prevented thereby from engaging in any occupation and performing any work for compensation or profit."

Was the plaintiff, by reason of his color-blindness, totally disabled in the sense that he was prevented from engaging in any occupation and performing any work for compensation or profit? We think not. He could engage in any occupation which did not require the ability to distinguish colors accurately. There are even kinds of railroad work that he could do. So, we think it would be straining the meaning of the language of this policy beyond the limits of reasonable construction to say that the plaintiff was, by reason of his color-blindness alone, disqualified from engaging in any occupation, or performing any work for compensation or profit.

The recent case of Prudential Ins. Co. of America v. Davis, decided by this court, opinion by Faw, P. J., reported in 18 Tenn. App., 413, 78 S. W. (2d), 358, 365, is in point. The condition of the policy was such as that to entitle the insured to its benefits, he must be "totally and permanently disabled to perform any work for any compensation of financial value," the practical equivalent of the condition in the policy we are now considering. The insured was a railroad brakeman, and had been for 14 years. He was 42 years of age. He had lived and worked on a farm until he was 26 or 27 years of age. He knew no occupation except farm work and railroading. In 1931 he fell from a railroad car and suffered a broken hip, or technically speaking "a fracture of the wing of the right ilium." There was a recovery to the extent that he could walk and could drive an automobile and do other light work, but not to the extent that he could engage in his former occupations of farm work and railroading. The court there said:

"Under the contract on which plaintiff is suing, proof that plaintiff is totally disabled from the prosecution of his usual employment as a railroad brakeman is not sufficient. His disability must be such as to render him wholly and continuously unable to perform any work for any kind of compensation of financial value.

"In the case of Buckner v. Jefferson Standard Life Insurance Co., 172 N. C., 762, 90 S. E., 897, it was held that 'a provision in an insurance policy that the insurer will pay a certain sum when the insured has become wholly disabled by bodily injuries and permanently, continuously, and wholly prevented thereby from pursuing any and all gainful occupations, will be construed as expressed, and the liability of the insurer thereunder will not be extended so as to include a total disability of the insured to perform his trade or vocation when other gainful occupations are still open to him."

To the same effect the court quoted excerpts from the cases of Parten v. Jefferson Standard Life Ins. Co., 30 Ga. App., 245, 117 S. E., 772; and Metropolitan Life Insurance Company v. Wann (Tex. Civ. App.), 28 S. W. (2d), 196, 198.

Pacific Mutual Life Ins. Co. v. McCrary, 161 Tenn., 389, 32 S. W. (2d), 1052, 1053, is the leading case defining the term "total disability" in this state. In that case the disability insured against was such as "totally and permanently prevents the insured from performing any work or engaging in any occupation or profession for wages, compensation or profit." Chief Justice Green in the opinion recognizes the distinction here made when he says:

"The clause of the policy quoted merely provides in order for an insured to claim these benefits, that he must be totally and permanently prevented 'from performing any work . . . for wages, compensation or profit' or 'engaging in any occupation or profession for wages, compensation or profit.' In short, the insured, to claim the benefits, must be disabled, not only from pursuing the avocation of physician or farmer [the avocations of the insured in that case], but must be disabled from pursuing any avocation for wages, compensation or profit."

In the case of Jake Principi v. Columbian Mutual Life Insurance Company, 169 Tenn., 276, 84 S. W. (2d), 587, 590, the court in an opinion by Justice McKinney state the rule in the following very apt language:

"The two following rules for determining liability are applicable:

"First, as a condition of recovery, it must appear that the insured is incapacitated to earn, not only in his chosen or previously formed occupation, but in any other to which he may be reasonably fitted.

"Second, To defeat recovery on the ground of earning capacity, it must appear that the remaining capacity to earn, despite disability, is a capacity to earn substantially. No scintilla rule applies. The earning capacity remaining must bear some reasonable relation to the natural or previous capacity to earn, against loss of which it is the purpose of the policy contract to insure."

The plaintiff in error cites and relies upon the case of Henderson v. Continental Casualty Co., 239 Ky., 93, 39 S. W. (2d), 209, as being

on "all fours" with the case at bar. The action was on a health policy conditioned to pay an indemnity if the insured should "be wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation by reason of sickness." The plaintiff was a freight brakeman. He became color-blind as the result of some disease or defect in his eyes, and was forced to give up his position as brakeman. He was able to, and did thereafter, engage in other work which did not require a color sense on his part. At the conclusion of his evidence the trial court directed a verdict for the insurance company and dismissed his suit. On appeal the Court of Appeals of Kentucky reversed this judgment, and in doing so they state that they are aware that the authorities differ as to the meaning that should be given to such terms as were employed in the policy under consideration; some courts holding that there can be no recovery unless the disability is such as to prevent the insured from doing any kind of work, or, in other words, to earn a livelihood at any employment; while other cases hold that it is only necessary that the disability be such as to prevent the insured from following his particular occupation; and that without undertaking to harmonize the authorities cited in support of these respective views, they adopt the liberal rule of construction and follow the cases last cited as being more in accordance with reason and justice; and continuing, the court say:

"In the policy here involved, the appellee insured the appellant as a freight brakeman. Under our decisions, the clause of the policy here involved had a certain meaning in the law, and that was that the disability was total if the insured was unable to follow his usual occupation, although he might be able to do something else. Hence it follows that, as the appellant was unable to follow his occupation as a freight brakeman because of the disability to his eyes, he was totally disabled within the meaning of his policy."

This case is cited in the case of Principi v. Columbian Mutual Life Insurance Company, supra, in support of the proposition there laid down, that in order to defeat recovery it must appear that the remaining capacity to earn, despite disability, is a capacity to earn substantially, a fact which we think sufficiently appears in this case, as the plaintiff was not disabled from engaging in any occupation or performing any work which did not require a color sense on his part.

We agree that the Henderson Case is quite similar in its facts to the case at bar, and if the question were an open one in this state it might be persuasive as an authority in support of the plaintiff's contention. But, as shown by the cases from which we have quoted above, the authorities in this state have adopted the stricter rule that under policies containing provisions such as the one we have before us the insured is not entitled to recover unless his disability is such

as prevents him from engaging in any profitable occupation and performing any substantial work for compensation or profit. Pacific Mutual Life Ins. Co. v. McCrary, 161 Tenn., 389, 32 S. W. (2d), 1052; Prudential Ins. Co. v. Davis, 18 Tenn. App., 413, 78 S. W. (2d), 358; Conley v. Pacific Mutual Life Ins. Co., 8 Tenn. App., 405; Temples v. Prudential Insurance Co. of America, 18 Tenn. App., 506, 79 S. W. (2d), 608, 612; Bowen v. Metropolitan Life Ins. Co., 17 Tenn. App., 322, 67 S. W. (2d), 164.

In the Temple Case, supra, the court defines the words "total disability" in the following language:

"If a man is wholly, continuously, and permanently unable to follow his usual occupation or any other gainful occupation or work during his lifetime, then he is totally and permanently disabled within the meaning of the phrase 'total and permanent disability.' "

The able and diligent counsel for plaintiff in error have in their brief presented an array of authorities in support of their contention. The cases relied upon are from those states which have adopted the "liberal rule of construction" referred to by the court in Henderson v. Continental Casualty Co., supra. Some of them, notably those from Kentucky, Missouri, and South Carolina, amply support their contention that the insured is entitled to recover if his disability is such as totally and permanently prevents him from performing the duties of his regular occupation; others are distinguishable by their facts from the case at bar. Suffice it to say that Tennessee has taken its stand with that other class of cases which hold that the insured is not entitled to recover under this form of contract so long as he is not disabled from performing the work or engaging in the duties of other gainful occupations.

The case of this plaintiff is one which appeals greatly to the sympathy of the court; it is most unfortunate for him that his policy did not insure him against any disability preventing him performing the duties of his particular occupation as yardmaster. But we are bound by the letter of the contract. As stated in 14 R. C. L., pp. 931, 932, and quoted in Conley v. Pacific Mutual Life Ins. Co., 8 Tenn. App., 405, 411:

"Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense."

The language of the contract before us seems to us to be plain; and we do not think we could give it the meaning claimed for it without doing violence to the words "prevented from engaging in any occupation and performing any work for compensation or profit." At the time he was discharged, the plaintiff was an able-bodied man

42 years of age, in good health, and able to engage in any field of work in which color-blindness was not a disqualification.

The assignments of error will be overruled, and judgment of the circuit court will be affirmed, at the cost of plaintiff in error.

Affirmed.